## UNITED STATES COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

Case No.:

ARON SECURITY INC. d/b/a ARROW
SECURITY,

      Plaintiff,

vs.

ADT LLC,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ARON SECURITY INC. d/b/a ARROW SECURITY ("ARROW"), by and through the undersigned attorneys, sues Defendant, ADT LLC ("ADT"), and alleges the following:

## GENERAL ALLEGATIONS

1.    Subject matter jurisdiction in this action is founded upon 28 U.S.C. § 1332.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because ADT resides in the Southern District of Florida.

3.    ARROW brings this action for monetary damages against ADT for failing to pay monies due and owing based upon ADT's breach of the parties' agreement and services provided, leading to the unjust enrichment of ADT.

4.    Plaintiff, ARROW, is a foreign profit corporation, duly organized and existing under and pursuant to the laws of the state of New York, with its principal place of address at 300 West Main Street, Smithtown, New York, 11787.

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

5.    Defendant, ADT, is a foreign limited liability company, duly organized and existing under and pursuant to the laws of the state of Delaware, with its principal place of address at 1501 Yamato Road, Boca Raton, FL, 33431, and within the jurisdiction of this Court.

6.    The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7.    At all times material hereto, Plaintiff, ARROW, is and has been a security guard company and security guard consulting company, which provides security guard services for hire.

8.    On or around May 13, 2008, ARROW and ADT Security Services Inc. entered into a Master Agreement for Subcontracting Services (the "contract"), whereby ARROW would provide security guard services to and on behalf of ADT Security Services Inc., in exchange for monthly payments. A true and correct copy of said contract, including exhibits, is attached hereto as **Composite Exhibit "A."**

9.    On June 12, 2008, ADT sent an Adoption Agreement, stating that ADT adopts the original agreement between ARROW and ADT Security Services Inc. ADT included a letter to ARROW further specifying that ADT would pay ARROW $14,600.00 per month for said services. A copy of ADT's Adoption Agreement and June 12, 2008 letter is attached hereto as **Exhibit "B."**

10.    At all times material hereto, ARROW provided security guard services to and on behalf of ADT, at the urging and directing of ADT and upon the promise that ADT would pay all monies due and owing to ARROW for said services.

11.    ADT agreed that ARROW would provide security guard services as and when ordered by ADT, for agreed upon and reasonable prices, payment to be made in full by ADT as and when said services were provided.

2

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

12.     ARROW and ADT have been doing business in this fashion for many years and have an established merchant relationship. Pursuant to ADT's requests, ARROW provided security guard services at various locations in Pennsylvania, New York, and New Jersey, and ADT accepted without reservation and without objection, the provision of said services at the agreed upon and reasonable prices as set forth on the various invoices which accompanied each and every provision of security guard services.

13.     Throughout the course of several years, ARROW billed ADT $14,600.00 per month on a monthly invoice, which ADT promptly paid each month. A true and correct copy of the transaction history between ARROW and ADT is attached hereto as **Exhibit "C."**

14.     On or around March 1, 2018, ADT ceased payment, yet continued to request and accept ARROW's security services.

15.     Presently, unpaid invoices due and owing to ARROW, during the relevant period covered in this lawsuit, from March 1, 2018, through October 31, 2018, total $116,800.00 plus interest, reasonable attorneys' fees, and costs. A true and correct copy of all unpaid invoices is attached hereto as **Composite Exhibit "D."**

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT**</u>

16.     ARROW re-alleges and reaffirms paragraphs 1 through 14 as if fully set forth herein.

17.     This is an action for Breach of Contract on behalf of ARROW against ADT.

18.     There existed a valid contract between ARROW and ADT, whereby ARROW was to perform security guard services to ADT at ADT's special instance and urging. *See* Composite Exhibit "A."

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

19.     ADT accepted without reservation and without objection, the provision of said services at the agreed upon and reasonable prices as set forth on the various invoices.

20.     The agreed upon and reasonable price of the security guard services for which payment has not been made is $116,800.00.

21.     ADT materially breached the aforementioned contract when ADT failed and refused to pay ARROW for said security guard services rendered and accept.

22.     As a direct and proximate result of ADT's material breaches, ARROW has suffered damages.

23.     ARROW is entitled to an award of its reasonable attorneys' fees and costs pursuant to the terms of the contract.

24.     ARROW demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff, ARON SECURITY INC. d/b/a ARROW SECURITY, respectfully requests that a judgment be entered against Defendant, ADT LLC:

a.  Awarding ARROW damages in the amount of $116,800.00;

b.  Awarding ARROW reasonable attorneys' fees and costs and expenses of this litigation pursuant to the terms of the contract;

c.  Awarding ARROW pre- and post-judgment interest; and

d.  Ordering any other and further relief this Honorable Court deems to be just and proper.

## COUNT II
## UNJUST ENRICHMENT

25.     ARROW re-alleges and reaffirms paragraphs 1 through 14 as if fully set forth herein.

26.     This is an action for Unjust Enrichment on behalf of ARROW against ADT.

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

27.     Beginning on March 1, 2018, ARROW furnished labor, services, and materials to ADT, with the expectation that ARROW would be paid for such labor, services, and materials. ADT conferred these benefits on ADT, who had knowledge thereof.

28.     The reasonable value of said labor, services, and materials is set out in the Invoices sent to ADT. *See* Composite Exhibit "D."

29.     ADT voluntarily accepted ARROW's labor, services, and materials (the benefits) and has benefited from such labor, services, and materials conferred.

30.     ADT will be unjustly enriched if they are allowed to inequitably retain the benefits above resulting from the labor, services, and materials provided by ARROW without being required to pay for the value of such labor, services, and materials.

31.     As a direct and proximate result of ADT's refusal to pay ARROW the fair market value for the value of the labor, services, and materials provided, ADT has been unjustly enriched at ARROW's expense.

32.     ARROW is entitled to an award of its reasonable attorneys' fees and costs pursuant to the terms of the contract.

33.     ARROW demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff, ARON SECURITY INC. d/b/a ARROW SECURITY, respectfully requests that a judgment be entered against Defendant, ADT LLC:

a.  Awarding ARROW damages in the amount of $116,800.00;

b.  Awarding ARROW reasonable attorneys' fees and costs and expenses of this litigation pursuant to the terms of the contract;

c.  Awarding ARROW pre- and post-judgment interest; and

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

    d.  Ordering any other and further relief this Honorable Court deems to be just and

proper.

Respectfully Submitted on this <u>26th</u> day of March, 2019.

        Pike & Lustig, LLP
        <u>*/s/ Michael J. Pike*</u>
        Michael J. Pike
        Florida Bar No.: 617296
        Daniel Lustig
        Florida Bar No.: 059225
        1209 N. Olive Ave.
        West Palm Beach, FL 33401
        Telephone: (561) 855-7585
        Facsimile: (561) 855-7710
        Email:  pleadings@pikelustig.com
        *Counsel for Plaintiff, Arrow*

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

# COMPOSITE EXHIBIT "A"



**MASTER AGREEMENT**

**FOR**

**SUBCONTRACTING SERVICES**

**THIS MASTER AGREEMENT FOR SUBCONTRACTING SERVICES** ("Agreement") is made as of this **13th** day of **May, 2008** (the "Effective Date") between **ADT SECURITY SERVICES, INC.**, a Delaware Corporation, with its principal place of business located at One Town Center Road, Boca Raton, FL 33486 (hereinafter referred to as "ADT"), and **Arrow Security** (hereinafter referred to as "Subcontractor") a New York Company with its principal place of business located at 60 Knickerbocker Ave, Bohemia, NY 11716.

**WHEREAS**, ADT desires to engage the services of Subcontractor to perform services for ADT as described in this Agreement. Such services may include installation, inspection, security guard response or patrol, equipment repair, and/or maintenance services (the "Work" and/or "Services");

**WHEREAS**, Subcontractor agrees to perform the Work as described in this Agreement and in strict accordance with the terms, conditions, and covenants of this Agreement;

**NOW THEREFORE**, for, and in consideration of the promises and undertakings hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, ADT and Subcontractor agree as follows:

**1.   Contract Documents.** The "Contract Documents" include the following:

(a) this Master Agreement for Subcontracting Services (the "Agreement");

(b) the contract related to the Work between ADT and the party with whom ADT has contracted to do the work (the "ADT Customer") including any general or special conditions, associated exhibits, drawings, specifications, work orders, change orders, and written interpretations of the Contract Documents issued by ADT(the "Prime Contract"). Notwithstanding the foregoing, any provisions related to the terms of payment found in the Prime Contract shall not apply to this Agreement unless expressly stated herein; and

(c) the following exhibits which are attached hereto and expressly incorporated by reference:

(1) Subcontractor / Vendor Pre-Qualification Questionnaire ("Exhibit A");
(2) Work Authorization ("Exhibit B");
(3) Multiple Services Operational Summary ("Exhibit C");
(4) Subcontractor Insurance ("Exhibit D"); and
(5) Background Checks and Substance Testing ("Exhibit E").

The intention of the Contract Documents is to include all labor, materials, equipment, and other items as required by ADT and/or the ADT Customer as are necessary for the proper execution and completion of the Work and the terms and conditions of payment therefore, and to include all Work which may be reasonably inferable from the Contract Documents as being necessary to produce the intended results. These Contract Documents form a part of this Agreement and in event of any conflict between the terms contained in any Contract Documents, the terms in this Agreement will control.

**2.   Master Agreement.** This Agreement shall operate as a master agreement and shall govern all present and future transactions entered into by ADT and Subcontractor for the services described in this Agreement. Individual future requests for Subcontractor Services will be initiated by the issuance of written Work Order as defined in Exhibit C by an authorized ADT Service or Installation Manager and such transactions shall become effective when the Work Order is accepted by Subcontractor.

**3.   Term; Termination.** The term of this Agreement shall be for three (3) years, commencing on the Effective Date and thereafter shall automatically renew on an annual basis unless earlier terminated by either party. In the event of early termination of this Agreement, unless Subcontractor is in material breach, each party understands and agrees that all open and outstanding Work Orders shall be completed by Subcontractor according to schedule and shall continue to be governed by the terms and Conditions of this Agreement. In addition, Subcontractor agrees that any and all sub-contracts or purchase orders which Subcontractor may have covering the Work, shall, at ADT's sole request, be fully assigned by Subcontractor to ADT. Upon termination in whole or in part by ADT without cause, Subcontractor shall be paid for the reasonable value of the Work performed by Subcontractor prior to termination plus reasonable direct close-out costs, but in no event shall Subcontractor be entitled to unabsorbed overhead, anticipatory profits or damages for termination, except as expressly provided herein. If no work has been performed by Subcontractor at the time of termination, Subcontractor shall be paid the sum of ONE HUNDRED DOLLARS ($100.00) for its undertaking the obligation to perform.

(a)   Subcontractor may terminate this Agreement at any time without cause by

Copyright 2005-2007 ADT Security Services, Inc.  All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08.doc



providing one hundred ninety (120) days' written notice to ADT. Notwithstanding such termination without cause, Subcontractor shall be obligated to complete any outstanding Work Orders;

(b)     ADT may terminate this Agreement or any Work Order at any time without cause by providing ninety (90) days' prior written notice to Subcontractor.

(c)     ADT may terminate this Agreement and/or any projects, effective as of the date of the notice of termination from ADT to Subcontractor, and without further notice to or opportunity of Subcontractor to cure upon the determination by ADT, in its absolute discretion, of Subcontractor's violation of any provision of Section 23 (Business Ethics) or Section 32 (Worksite Policies & Safety), or the occurrence of any illegal, fraudulent, dishonest or immoral act or omission of Subcontractor, its employees or Owner including, without limitation, engaging in any act or business practice, that, in the sole discretion of ADT, could have adverse effect on the business, operations or reputation of ADT, its Customer, or any of ADT or its Customer's affiliates.

(d)     In cases of termination for cause or breach, ADT shall notify Subcontractor of the breach and Subcontractor shall have five (5) business days after notification to cure the breach. Notwithstanding the foregoing, for instances of material breach, ADT may, at its sole discretion, terminate this Agreement and any other agreement in effect between ADT and Subcontractor at the time of the Subcontractor's material breach with one (1) days' written notice to Subcontractor. In the event ADT terminates this Agreement or any Work Order for cause and it is later determined by a court of competent jurisdiction, or other similar proceeding, that such termination for cause was unjustified, then in such event such termination for cause shall automatically be converted to a termination for convenience under the terms of this Agreement.

(e)     Material breach includes, but is not limited to, ADT's determination that Subcontractor: (i) has failed to supply a sufficiency of skilled workmen or materials of the proper quality and quantity, (ii) has failed to prosecute the Work with promptness and diligence or has caused the stoppage or delay of or interference with the work of ADT or any other subcontractors on the work site, (iii) has violated any law(iv) has provided false or misleading information to ADT; (iv) has failed to provide conforming current insurance certificates and/or business licenses; or (v) has failed to notify ADT of any material changes to any information provided to ADT.  A material change includes, but is not limited to, a change of control and/or ownership, bankruptcy, or any litigation that would impair Subcontractor's ability to perform its obligations under this Agreement.

(f)     If Subcontractor has failed to cure a material or non-material breach within the time period set forth above, ADT may provide, through itself or others, any labor or materials necessary to perform or correct the Work and may deduct the cost of such labor and materials from any money due or thereafter to become due to Subcontractor under this Agreement, and ADT shall also have the right to terminate all or part of Subcontractor's right to proceed with the Work and to enter on the premises and take possession of, for the purpose of completing the Work, of all materials thereon, and to employ any other person or persons to finish the Work. In the event that ADT terminates this Agreement or a Work Order for cause, ADT may deduct and withhold from payments then or thereafter to become due to Subcontractor the cost of correcting any deficiencies in the Work, plus overhead of fifteen percent (15%) to cover costs not readily ascertainable and not as a penalty. If payments then or thereafter due Subcontractor are insufficient to cover such amount, Subcontractor shall promptly pay the difference to ADT.

**4.  Work.**  The Work to be performed by the Subcontractor is specified in the attached Work Authorization(s) (Exhibit B). In performance of the Work, Subcontractor will comply with all standards and guidelines set forth in this Agreement. Subcontractor shall have sole responsibility for providing the means and methods of performing the Work. Subcontractor shall carefully examine the Contract Documents and the work site to become thoroughly familiar with the provisions, requirements, and conditions therein and shall promptly notify ADT, in writing, of any defects, deficiencies, discrepancies, or errors before proceeding with the Work. Failure of Subcontractor to detect and report to ADT in writing any such defects, deficiencies, discrepancies, or errors that could have been detected through the exercise of reasonable care shall relieve ADT of responsibility for any costs, damages, and/or expenses incurred by Subcontractor as a result of such defects, deficiencies, discrepancies, or errors.

**5. Project Schedule and Sequence.**

(a) By signing a Work Authorization or commencing the Work, Subcontractor acknowledges that (i) ADT has made available to Subcontractor the work schedule adopted by ADT, (ii) such schedule is acceptable, and (iii) Subcontractor has scheduled and sequenced its Work on the basis of ADT's schedule. Subcontractor further acknowledges that as the Work progresses it may be necessary for ADT to change the sequential order and duration of the various activities.     ADT may require Subcontractor, at no additional cost to ADT, to prosecute Subcontractor's Work in such sequence as the progress of other subcontractors and the work schedule reasonably dictates. If, in the opinion of ADT, Subcontractor falls behind in the progress of the Work, Subcontractor may be directed to take such steps as deemed necessary by ADT to improve the rate of progress.

(b) Subcontractor shall initiate its Work whenever any or all of the Work becomes

Master Agreement for Subcontracting Services - 2

Copyright 2005-2007 ADT Security Services, Inc.  All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08



available or as otherwise directed by ADT and shall thereafter proceed and complete performance of the Work promptly, diligently and in such a manner and sequence as to permit completion of the Work within the time provided by the Work Order and within the schedule formulated by ADT. Time is of the essence in the performance of the obligations of Subcontractor, and should Subcontractor in any way cause delay to the progress of the Work so as to cause any loss or damage to ADT or any loss or damage for which ADT may become liable, Subcontractor shall be liable for such loss or damage and shall indemnify, protect, defend and hold ADT harmless there from as required by this Agreement and to the fullest extent permitted by law.

### 6. Modifications to the Work.

**(a) Changes.** ADT may make modifications to the Work or the work schedule at any time within the general scope of the Agreement. Any unilateral directive, mutual agreement, or verbal instruction that Subcontractor deems to be a change must be made in writing. Unless otherwise directed by ADT, Subcontractor shall promptly proceed with the modifications to the Work specified and shall not thereafter order materials or perform Work which would be inconsistent with the modifications. If the modifications require changes to the compensation or the schedule, Subcontractor shall, without any delay in its performance of the Work, make claims to ADT in writing within seventy-two (72) hours of Subcontractor's receipt of the request to modify the work for any additional cost, extension of time, damages for delays, or other causes arising out of the modifications. If Subcontractor fails to provide ADT with such written notice or fails to obtain written verification of the change, such failure shall be deemed to be Subcontractor's waiver of any claims related to the change.

**(b) Change Order Proposals.** Recognizing that the ADT Customer shall be the binding and final authority on the interpretation of the project plans or specifications, Subcontractor agrees that when ADT or the ADT Customer requests that the Subcontractor submit a change order proposal, Subcontractor shall submit such change order proposals in a form acceptable to ADT and within the time period prescribed by ADT. Subcontractor requests or claims shall be submitted in writing by Subcontractor in sufficient time to allow ADT to comply with the applicable provisions of the Contract Documents. If Subcontractor does not comply with the time requirements and ADT is required to submit a price quotation to the ADT Customer which includes a proposed change to Subcontractor's Work, ADT shall use its best efforts to estimate in good faith the proposed change as it affects Subcontractor's work. In such event, the portion of ADT's proposal attributable to Subcontractor's work shall be the maximum equitable adjustment due to Subcontractor.

### 7. ADT's Right to Accelerate/Overtime. ADT, if it deems necessary, may accelerate Subcontractor's work by directing Subcontractor in writing to work overtime; and, if so instructed, Subcontractor will work said overtime and, provided that Subcontractor is not in default of any of the provisions herein, ADT will pay Subcontractor for the actual proved incremental portion of such wages paid at rates which have been approved by ADT. In no event shall Subcontractor be entitled to any inefficiency, impact, or other special or indirect charges or damages of any kind as a result of any acceleration or other schedule or sequence modifications. If, however, Subcontractor delays the progress of the Work, Subcontractor shall, at its own cost and expense, work such overtime as may be necessary to avoid delay in the completion of the Work.

### 8. Time Extensions. If Subcontractor's performance of this Agreement is delayed or disrupted by any acts of ADT, other subcontractors, or ADT's suppliers, or otherwise delayed or disrupted by any acts or causes which would entitle ADT to an extension of time under the Prime Contract, Subcontractor shall receive an equitable extension of time for the performance of its work, but shall not be entitled to any increase in compensation or to damages or additional compensation as a consequence of such delays or disruptions, unless such compensation is afforded to ADT under the Prime Contract. .

### 9. Compensation. ADT will pay the Subcontractor the negotiated rates and fees for the Work performed as specified in the attached Work Authorization (Exhibit B). ADT shall be entitled to withhold from such payment any sums owed by Subcontractor to ADT, including such monies due, or alleged due, resulting from any breach by Subcontractor of any provision or obligation of this Agreement or any other agreement then in effect between ADT and Subcontractor.

**(a) Time and Material Payments.** Work done on a time and material basis must be signed for daily by ADT's authorized representative and invoiced weekly no later than two (2) weeks following the week in which the Work was done. No payment for time and material Work will be made unless the Work has been authorized in writing by ADT, outlining the rates and terms of payment and the appropriate daily approval requirements. Strict compliance with the requirements of this paragraph must be observed; otherwise any claims by Subcontractor hereunder shall be deemed waived.

**(b) Progress Payments.** In the event the Prime Contract call for partial or progress payments and ADT and Subcontractor have agreed to follow the payment schedule set forth therein, at the intervals specified in the Prime Contract and at least five days prior to the date the ADT Customer requires ADT to submit its partial payment estimate, Subcontractor shall

Copyright 2005-2007 ADT Security Services, Inc. All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08



furnish directly to ADT's field office an acceptable partial payment estimate for Work performed by Subcontractor in the form and manner directed by ADT. ADT shall include in its request to the ADT Customer for partial payments the partial payment estimate of Subcontractor. Unless otherwise provided herein, ADT shall make partial payments to Subcontractor within ten (10) days following ADT's receipt of payment from the ADT Customer for Work performed by Subcontractor including changes in the Work. All material and work incorporated in the project or for which partial payment has been made shall become the property of ADT, or, if the Contract Documents so provide, the property of the ADT Customer; provided, however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all Work and materials upon which payments have been made. The making of any partial payments by ADT shall not be construed as acceptance of the Work or materials in whole or in part. Notwithstanding anything to the contrary appearing herein or in the Prime Contract Subcontractor shall not be entitled to receive any progress payment or final payment prior to ADT's actual receipt of payment from the ADT Customer. Subcontractor agrees that ADT's actual receipt of full payment from the ADT Customer shall be a condition precedent to ADT's obligation to pay Subcontractor and to the bringing of any action by Subcontractor against ADT or its Surety, if any, relating to ADT's failure to make payment. Subcontractor further agrees that its full performance of this Agreement shall not constitute an exception to the provisions of this Section 9.

(c) **Release of Payment.** Payments due under this Agreement will not be released until all of the following conditions have been met: (1) the Work Order has been signed by the Subcontractor and has been approved and countersigned by ADT; (2) Insurance Certificates satisfying the requirements of <u>Exhibit D</u> have been received; (3) release of lien and waivers of claim have been provided from all tier subcontractors and material men evidencing payments through the previous month, if required by ADT; and (iv) certified payrolls have been provided, if requested by ADT, or if required by the Prime Contract.

(d) **Retainage.** Notwithstanding any other provision of this Agreement or the Prime Contract, it is agreed that ADT may, at its sole option, retain 10% of the amount due Subcontractor as progress payments or under partial payment estimates for Work performed by Subcontractor until final completion and acceptance of Subcontractor's Work by the ADT Customer. ADT may withhold from any payment an amount sufficient to protect ADT because: (1) there exists reasonable doubt that Subcontractor's Work can be completed for the unpaid balance of the agreed project price; (2) there exists reasonable doubt that Subcontractor's Work will be completed on schedule; (3) Subcontractor is not satisfactorily

prosecuting the Work of this Agreement; (4) defective work; or (5) any other breach of this Agreement by Subcontractor which has not been cured after reasonable notice from the ADT thereof.

(e) **Right to Withhold or Offset Payment.** ADT may withhold amounts otherwise due under this Agreement or any other agreement between the parties to cover ADT's reasonable estimate of any costs or liability ADT has incurred or may incur for which Subcontractor may be responsible under this Agreement or any other agreement between the parties. For purposes of this paragraph the phrase "any other agreement between the parties" shall be deemed to include any agreement between Subcontractor and ADT or any joint venture or other entity in which ADT and/or Subcontractor have an ownership interest.

(f) **Joint Checks.** ADT reserves the right to make direct payment or issue joint checks to Subcontractor and its material suppliers, sub-subcontractors, labor unions, equipment suppliers, etc. if, in ADT's sole judgment, it is necessary to do so to ensure payment to the foregoing parties or if the foregoing parties have filed a notice of non-payment, lien or intent to lien, stop notice, etc.

**10. Taxes.** Subcontractor acknowledges and agrees that Subcontractor is solely responsible for collecting and remitting any and all federal, state and local taxes for which Subcontractor is liable.

**11. Other Clients.** Subcontractor may represent, perform services for, and be employed by clients, persons or companies other than ADT, as Subcontractor, in its sole discretion, may determine.

**12. Subcontracting.** Subcontractor may not subcontract any part of the Work without the prior written consent of ADT. All Work performed by the approved sub-subcontractor will be deemed Work performed by the Subcontractor under the provisions of this Agreement. Subcontractor will immediately discontinue the use of any sub-subcontractor in performance of the Work if ADT notifies Subcontractor in writing that ADT is not satisfied with such sub-subcontractor's performance.

**13. Independent Contractor.** ADT and the Subcontractor understand and agree that Subcontractor's status under this Agreement is that of an independent contractor and that neither Subcontractor nor any of Subcontractor's employees shall be deemed to be employees of ADT or any of its affiliates for any purpose whatsoever.

**14. Employee Benefits.** Subcontractor expressly understands and agrees that neither Subcontractor, nor its employees or agents are, and with the passage of time shall not become, eligible for, or entitled to participate in, any plans or arrangements that ADT or any of its affiliates

Copyright 2005-2007 ADT Security Services, Inc. All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08



maintain for the benefit of ADT's employees, including, without limitation, pension, profit sharing, health, welfare benefit or other fringe benefit plans.

**15. Compliance with Laws.** Subcontractor represents that Subcontractor and all of its employees and agents are in compliance and at all times during the performance of the Work hereunder will remain in compliance with all federal, state and local laws, ordinances and regulations applicable to the Work including, but not limited to, any and all laws and regulations regarding permits, licenses and fees that are required for Subcontractor's performance of the Work and any federal, state and local laws that govern Subcontractor as a contractor, as an employer of labor, or otherwise. Subcontractor will perform the Work in strict conformity with all applicable laws and expressly agrees not to discriminate against any employee or applicant for employment because of race, color, religion, sex or national origin and will, during the performance of this Agreement, comply with the Equal Opportunity Clause of Section 202, Executive Order 11246 of September 24, 1965, as amended, which is incorporated herein by reference. The provisions of 41 C.F.R. 50-250.2, concerning Veteran's employment, are incorporated herein by reference thereto. For the purpose of this Agreement, the term "contractor", as used in said regulations, shall mean the Subcontractor. The provisions of Title 20, Chapter VI, Subchapter C, Section 741.3 of the Code of Federal Regulations concerning employment of the Handicapped, are incorporated herein by reference thereto. Subcontractor shall indemnify and hold ADT harmless from any third party claims, actions, proceedings, and damages, including attorneys' fees or costs, and fines, penalties or other restrictions imposed by governmental agencies, authorities or state licensing boards resulting from Subcontractor's breach of these provisions. At any time during the term of this Agreement, ADT may request, and Subcontractor shall provide, proof that it has obtained and kept current all necessary licenses.

**16. Warranties and Guarantees.** Guarantees and warranties of the Work as defined in the attached exhibits and/or the Prime Contract are included in this Agreement. Unless a different period is provided in the Prime Contract or the exhibits to this Agreement, or is required by applicable state or federal law, Subcontractor shall repair or replace, at its own expense and at the convenience of the ADT Customer and ADT, any defects in workmanship or materials discovered within one year from the date of written acceptance of the Work by ADT and/or the ADT Customer.

**17. Prevailing Wage Reporting Requirements.** If performance of the Work requires payment of any prevailing or pre-approved wage rates such as Davis Bacon, GSA, DOD, etc., Subcontractor shall fully comply with all of the wage and hour requirements applicable to the Work and shall

timely prepare and file any required reports and/or documents certifying Subcontractor's compliance.

**18. Indemnification.** To the fullest extent permitted by law Subcontractor and is Surety, if any, covenant and agree to indemnify, defend, protect and save ADT, ADT's Customer, and anyone else required by the Prime Contract ) and their respective parents, subsidiaries, affiliates, agents, employees, servants, representatives, invitees, directors and officers (the "Indemnities") harmless of and from any and all claims, losses, damages, suits, actions and proceedings, as well as all attorneys' fees and costs which may be asserted against the Indemnities arising out of, or occurring in connection with (1) the performance or nonperformance the Subcontractor's obligations under this Agreement; or (2) any act, omission, fault or negligence, whether active or passive, of Subcontractor or Subcontractor's agents, employees or subcontractors, whether on the work site or proceeding to or from the site; or (3) any assertions or claims under Workers Compensation or similar acts made by persons furnished by Subcontractor or of Subcontractor's sub-subcontractors; or (4) any failure of Subcontractor or supplier of Subcontractor to perform all Work required within the scope of this Agreement in strict accordance with the provisions of this Agreement and the Prime Contract.

Except as may otherwise be provided by applicable law, such rights to indemnification shall exist regardless of whether any act, omission, misconduct, negligence or default (other than gross negligence or willful misconduct) on the part of ADT or ADT's Customer or any of their officers, employees, or agents contributed or may be alleged to have contributed to the personal injury, loss, damage, death or property damage in any way thereto.

**19. Insurance, Bonds, Liens, Hazardous Substances.**

(a) **Insurance.** Subcontractor shall purchase and maintain for the duration of the Agreement at the Subcontractor's own expense all necessary insurance against claims for injuries to persons or damages to property which may arise from or in connection with performance of the Work hereunder by Subcontractor, its agents, representatives, employees, or sub-subcontractors as set forth in Exhibit D, ("Subcontractor Insurance Requirements") attached hereto and incorporated by reference. Subcontractor shall provide ADT with written proof of such coverage prior to commencing the Work.

(b) **Bonds.** If requested by ADT, Subcontractor shall furnish separate bonds covering the faithful performance of the Subcontractor ("Performance Bond") and the payment of all obligations arising under it ("Payment Bond") in such form and with such sureties as are acceptable to ADT. The amount

Master Agreement for Subcontracting Services - 5

Copyright 2005-2007 ADT Security Services, Inc.  All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08



of such bonds will be 100% of the subcontract price as adjusted from time to time by any change orders issued. Where such bonds are requested by ADT, the premium for such bonds shall be included in the subcontract price.

(c) **Liens.** To the extent permitted by law, Subcontractor waives all rights to file any lien or claim against the project property and shall promptly discharge, by bond or otherwise, any claim or lien filed against the project property by any subcontractor or supplier (of any tier) of Subcontractor. If Subcontractor fails to discharge any such lien or claim, ADT may discharge such lien or claim and back-charge Subcontractor for all cost and expense incurred by ADT in discharging such lien or claim. Subcontractor agrees that as a condition precedent to receiving partial payments from ADT for Work performed pursuant to this Agreement, Subcontractor shall execute and deliver to ADT with its request for partial payments a release of lien and a release of claim in the form and manner requested by ADT.

(d) **Hazardous Substances.** If the Subcontractor encounters material on the work site reasonably believed to be a hazardous substance, Subcontractor shall immediately cease work in the affected area and immediately notify ADT in writing of such condition. Subcontractor shall not use or transport onto the Work site any hazardous substances or materials.

20. **Vehicles and ADT Logo.** Subcontractor shall obtain and maintain its own vehicle(s) as necessary to perform the Work. All Subcontractor vehicles must be properly maintained, registered, insured, and licensed as required by state and local laws or regulations. **SUBCONTRACTOR SHALL NOT USE OR OPERATE ANY ADT VEHICLES UNDER ANY CIRCUMSTANCES.** Unless Subcontractor is also an ADT Authorized Dealer, use of an ADT Logo, trade name, service mark, license number, or other ADT intellectual property on any Subcontractor vehicle is strictly prohibited.

21. **Use of ADT Materials.** If ADT, in its sole discretion, has determined that it is necessary for Subcontractor to use any ADT equipment, tools, trade secrets, software, or information (the "ADT Materials")Subcontractor shall use such ADT Materials solely for the purpose of performing the Work and solely for the benefit of ADT. ADT Materials include, but are not limited to, MASterMind, VRTs (Voice Response Terminals) and other systems used by ADT for Work Order dispatch and resolution. Subcontractor understands that any ADT Materials provided to Subcontractor contain ADT Proprietary and/or Trade Secret information and shall remain the exclusive property of ADT. Subcontractor shall not copy, sell, share, or otherwise distribute any of the ADT Materials. All such ADT Materials shall be returned to ADT immediately, without retaining any copies, upon the termination or non-renewal of this Agreement or at any time at ADT's request.

22. **Specialized Product Knowledge, Training, or Tools.** Subcontractor shall have acquired the level of knowledge, skills, training and tools as is customary in its particular field or trade to perform the Work. If ADT requests that Subcontractor perform Work that requires product knowledge or training particular to ADT or ADT's business, ADT will provide such necessary training to a fixed number of Subcontractor employees at no cost to the Subcontractor. Thereafter, such trained Subcontractor employees shall be responsible to train any additional Subcontractor employees as necessary to perform the Work according to the agreed schedule. If any specialized tools are required to perform the Work, ADT will loan such specialized tools at no cost to Subcontractor. Upon completion of the Work, Subcontractor shall return all loaned tools to ADT in the condition in which they were received, less normal wear and tear. Any loaned tools not returned to ADT, will be paid for by Subcontractor at ADT's replacement cost. ADT may deduct the cost of such tools from any amounts owed to Subcontractor.

23. **Business Ethics.** It is ADT's policy to conduct business lawfully and in accordance with the highest ethical standards and to require its Subcontractors to maintain equivalent standards. In performing any ADT Work, Subcontractor and its employees shall abide by a code of ethical business conduct that meets or exceeds the following:

(a) Conduct all dealings with fairness, honesty, and integrity.

(b) Ensure that all financial transactions are handled in a responsible manner and recorded accurately.

(c) Protect information and property that belongs to ADT, ADT's customers, other contractors at the work site, and suppliers against loss, theft, damage, and misuse.

(d) Avoid actual, potential, or perceived conflicts of interest.

(e) Recognize that even the appearance of misconduct or impropriety can be damaging to ADT's reputation, and act accordingly.

Subcontractor employees shall report any observations of unethical business practices and/or suspected violations of ethics-related laws to the ADT Subcontract Labor Department Manager or the ADT/Tyco Law Department as follows or to any other person or department as ADT may designate from time to time:

ADT Subcontract Labor Department
Phone: (585) 321-4826

ADT/Tyco Fire & Security Law Department
Phone: 561-988-3600

Copyright 2005-2007 ADT Security Services, Inc. All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08



**24. Work Site.** When performing Work in an area occupied by the ADT Customer, every effort will be made by Subcontractor to protect the area and its contents to minimize the possibility of damage or destruction of such property and/or contents. Subcontractor will, at its sole expense, be responsible for and shall protect its Work from damage until completion and final acceptance by the ADT Customer. Subcontractor shall not cause damage or injury to the work of other contractors and if such damage occurs Subcontractor shall pay all costs of repairing or replacing such damaged work. Subcontractor will, at all times, keep the work site free from accumulation of waste materials or rubbish. All debris and rubble created by the Subcontractor will be discarded in the appropriate receptacles. Subcontractor will ensure that the work site is broom clean at the end of each work day. At the completion of the Work, Subcontractor will remove all waste materials and rubbish from and about the Work site as well as its tools, construction equipment, machinery and surplus materials.

**25. Apparel and Appearances.** While present at the work site, Subcontractor personnel shall at all times be clean, neat and appropriately attired. All Subcontractor personnel shall dress in a manner and have an appearance that is appropriate and professional in light of their job function and the environment in which they work. Hard hats and work boots are required on all construction sites. Examples of acceptable attire are khakis or slacks with socks and closed shoes, shirts with collars. Examples of unacceptable attire are shirts with sexual or offensive messages or pictures, or shirts promoting liquor or cigarettes, tank tops, midriff tops, blue jeans (except on construction sites), low cut shirts, flip-flops, athletic shoes (e.g., tennis, basketball, baseball cleats, etc.). ADT shall interpret this policy and interpretations shall govern. No signs for any supplier or subcontractor shall be displayed on any ADT work site. All Subcontractor employees shall carry photo identification ("Photo I.D."). If permitted by ADT, Subcontractor employees may identify themselves as an Approved ADT Subcontractor and must show their Photo I.D. and a copy of the Work Order and/or evidence that ADT has authorized the Subcontractor to perform the Work. All inquires related to the Work shall be made to the local ADT Sales and Service office.

**26. Non-Disclosure.** Subcontractor shall not disclose to any person or any entity any information obtained by Subcontractor or such information that is developed by Subcontractor during or following the performance of the Work which relates in any way to (a) ADT; (b) ADT's business; (c) any of ADT's affiliates or their respective businesses; or (d) ADT's Customer. Subcontractor expressly understands and agrees that all technical information in the nature of designs, blueprints, drawings, specifications, engineering data, technical manuals or proprietary product know-how and any other

information or documentation connected with the Work are of a confidential nature and are not to be reproduced or divulged to anyone except to the extent required to perform the Work, and will be returned to ADT on job completion. Subcontractor agrees to assign to ADT and not otherwise make use of any invention, improvement or discovery (whether or not patentable), conceived or reduced to practice, in the performance of this Agreement by any employee of the Subcontractor or other person working under Subcontractor's direction, and such assignment shall be considered as additional consideration for the making of this Agreement. Upon completion of the Work, the Subcontractor shall deliver to ADT any and all information relating to any such invention, improvement or discovery and shall cause employees or sub-subcontractors to sign, as appropriate, documents necessary or convenient to enable ADT to file applications throughout the world and to obtain title thereto. Notwithstanding any other provision contained herein, Subcontractor agrees to indemnify and hold ADT and its affiliates harmless from all third party claims, actions, proceedings and damages, including costs and attorneys' fees, in connection with Subcontractor's breach of this paragraph. In addition, the parties agree that an impending or existing violation of this paragraph would cause irreparable harm to ADT and its affiliates for which there would be no adequate remedy at law. Accordingly Subcontractor agrees that in addition to the foregoing indemnity and other rights and remedies that may be available to ADT or its affiliates, ADT and its affiliates shall be entitled to obtain immediate injunctive relief prohibiting such violation.

**27. Non-Solicitation.** Subcontractor shall not, without the express written consent of ADT (a) directly or indirectly solicit, sell to, communicate with, advertise to, or accept money from any ADT customer, or (b) take any action intended to, or having the foreseeable effect of, adversely affecting ADT's relationship with such ADT Customers. Subcontractor expressly acknowledges that ADT's relationships with its customers, the goodwill associated with such relationships, constitute the property of ADT, and that Subcontractor shall take no action whatsoever affecting ADT's relationship with any of ADT's Customers. This provision shall survive termination of this Agreement.

**28. No Publicity.** Except as required by law, the Subcontractor may not issue or release any press release, advertisement, promotional material, announcement or other statement relating to this Agreement or the terms of this Agreement without the prior written consent of ADT, which consent shall be given or withheld by the exercise of ADT's sole discretion. The Subcontractor will secure ADT's prior written approval before any information relating to this Work is released to anyone other than employees of the Subcontractor.

Copyright 2005-2007 ADT Security Services, Inc. All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08



**29. Notices.** All notices required or permitted by this Agreement shall be in writing, signed by the party serving the notice, sent to the party at the address shown on the first page hereof or to such other address as either party designates to the other in writing as a place for the service of notice. Such notices shall be sent either via facsimile, via registered or certified United States mail (return receipt requested), or via air courier service, and shall be deemed given when actually received at the address shown on the postal or air courier receipt. Notices not given in this manner or within the time limits set forth in this Agreement shall be of no effect and may be disregarded by the party to whom they are directed.

**30. Assignment.** Subcontractor may not assign this Agreement nor any of Subcontractor's obligations under this Agreement. Any subcontracting or assignment of this Agreement without ADT's prior written consent shall be a material breach of this Agreement. ADT may assign this Agreement to any third party.

**31. Background Checks and Substance Testing.** Subcontractor warrants and represents that all of its employees or agents engaged in the performance of the Work have successfully passed a drug test and a criminal background check to the standards set forth in Exhibit E ("Background Checks and Substance Testing"), attached hereto and incorporated by reference. Subcontractor further warrants and represents that all of its officers, principals, and key managerial employees have successfully passed a the background checks and substance testing as set forth in Exhibit E. Subcontractor agrees that it shall produce certification satisfactory to ADT upon ADT's request that Subcontractor has complied with the terms of this paragraph. Subcontractor consents and authorizes ADT to conduct, at ADT's sole discretion and expense, reasonable background checks and/or drug tests on any Subcontractor employees or agents engaged by Subcontractor to perform the Work. . Subcontractor shall cooperate with and provide ADT with any information, as ADT shall reasonably request, to assist ADT in carrying out such background checks and/or drug tests. Failure to comply with this paragraph shall constitute grounds for ADT's termination of this Agreement upon one (1) days written notice to Subcontractor without opportunity to cure.

**32. Work Site Policies and Safety.** Subcontractor agrees to comply with, and will require its employees and agents to comply with, any rules, policies and procedures, including those relating to health, safety, and security, promulgated by ADT and/or ADT's Customer. Subcontractor agrees to inform each of its employees and agents who will perform services at the work site of the terms of such work site policies. Subcontractor further agrees to take such further and other measures as may be prudent to avoid accidents and the creation of hazardous situations in the performance of its work hereunder or while any of Subcontractor's

employees or agents are present at the work site. The Subcontractor will be responsible for the safety of the Work.  In discharging that responsibility, Subcontractor will comply with the requirements of the Occupational Safety and Health Act of 1970 and any other state or local act or other requirement of law affecting safety and health. In addition, ADT is committed to providing a safe workplace and a workforce that is free from substance abuse.   Should ADT, ADT's Customer, or any party in interest to the work site request that any Subcontractor employee or agent be removed from the work site for any reason, Subcontractor shall immediately comply and shall not permit such Subcontractor employee or agent to reenter the work site unless and until the requesting party has tendered written authorization for admittance. Subcontractor shall not be permitted to bring any unauthorized persons to the work site.

**33. Remedies.**

**(a) No Damages.** Except as expressly set forth in this Agreement, ADT shall not be liable in any manner whatsoever on account of termination by ADT, with or without cause, or termination by Subcontractor or expiration of this Agreement for any reason even though thereafter ADT, another Subcontractor or any other party may complete any transaction inaugurated by Subcontractor. ADT's right of termination as provided herein is absolute and Subcontractor has considered the possibility of expenditures necessary for the performance of the terms of this Agreement and the possible loss or damages incident to Subcontractor in the event of expiration or termination of this Agreement by ADT, with or without cause, or termination by Subcontractor of this Agreement. It is expressly understood that ADT shall not be liable to Subcontractor for damages in any form by reason of the non-renewal termination of this Agreement by either party, whether such non-renewal was based on termination with or without cause.

**(b) Waiver of Claims.** Sub-contractor hereby waives, abandons, disclaims, forbears, relinquishes, forfeits, surrenders and agrees not to assert against ADT any claim (including any claim for the breach of the implied contractual duty of good faith and fair dealings), cross-claim or counterclaim, or other claim for any compensation or damages whatsoever, whether based on goodwill established, customers created, expenditures incurred or investments made by Subcontractor or anticipated profits or revenues of Subcontractor related to this Agreement or for any direct damages, special damages, indirect damages, incidental damages, consequential damages and/or punitive damages which arise from or relate to the expiration or termination of this Agreement by ADT, with or without cause, or termination by Subcontractor or for any other reason, or arise from or relate to any other claim.  In addition Subcontractor hereby knowingly waives and relinquishes any right to seek equitable relief, which may relate in any way to the termination

Copyright 2005-2007 ADT Security Services, Inc.  All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08



or expiration of this Agreement. In the event Subcontractor institutes legal process in breach of this section, Subcontractor shall pay ADT on demand all legal fees, costs and expenses, both for in-house corporate and outside counsel in responding to such legal process.

**(c) Remedies Cumulative.** No right or remedy in this Agreement is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation on any duties, obligations, rights and remedies otherwise imposed or available by law.

**(d) SAFETY Act Waiver.** Certain of ADT's systems and services have received Certification and/or Designation as Qualified Anti-Terrorism Technologies ("QATT") under the Support Anti-terrorism by Fostering Effective Technologies Act of 2002, 6 U.S.C. §§ 441-444 (the "SAFETY Act"). As required under 6 C.F.R. 25.5 (e), to the maximum extent permitted by law, ADT and Subcontractor hereby agree to waive their right to make any claims against the other for any losses, including business interruption losses, sustained by either party or their respective employees, resulting from an activity resulting from an "Act of Terrorism" as defined in 6 C.F.R. 25.2, when QATT have been deployed in defense against, response to, or recovery from such Act of Terrorism.

**34. Governing Law; Notice.**

**(a) Governing Law.** For all Work to be performed on private property, any controversies or legal issues arising out of this Agreement and any action involving the enforcement or interpretation of any rights hereunder shall be submitted to the jurisdiction of the State Courts of the Seventeenth Judicial Circuit of Broward County, Florida, the venue sitis, and shall be governed by the laws of the State of Florida. For all Work to be performed on public property, the governing law provisions of the Prime Contract shall prevail.

**(b) Notices.** Any and all notices permitted or required to be given under this Agreement shall be in writing and shall be deemed duly given: (i) upon actual delivery if delivery is by hand or by nationally recognized overnight express mail; or (ii) upon receipt by the transmitting party of a confirmation or answer back if delivery is by telex, telegram, or facsimile, or (iii) after three (3) days following delivery into the United States mail if delivery is by postage paid certified return receipt requested mail. Each such notice shall be sent to the respective party at the address indicated below or to any other address or person that the respective party may designate by written notice delivered pursuant hereto:

IF TO ADT:
    ADT Security Services, Inc.
    One Town Center Road
    Boca Raton, FL 33486
    Attention:

WITH COPY TO:
    ADT Security Services, Inc.
    One Town Center Road
    Boca Raton, Florida 33486-1010
    Attention: Law Department

IF TO SUBCONTRACTOR:
    Arrow Security
    60 Knickerbocker Ave
    Bohemia, NY 11716
    Attention: A.J. Caro

**35. Parties Bound.** This Agreement shall be binding on and inure to the benefit of the contracting parties and assigns when permitted by this Agreement.

**36. Severability and Savings.** If any clause or provision contained in this Agreement shall for any reason be determined to be invalid, illegal or un-enforceable, then it is the express intention of the parties that the remainder of the Agreement shall not be affected thereby, and that in lieu of each clause or provision of the Agreement which may be determined to be illegal, invalid or unenforceable, there may be added a clause or provision as similar in terms of such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable. Further, the Subcontractor acknowledges that this Agreement was fully negotiated and agrees that such Agreement shall not be interpreted against either party as the drafter.

**37. Modifications.** No waivers, alterations, amendments or modifications of this Agreement or any associated exhibits shall be valid unless such waivers, alterations, amendments or modifications have been made in writing and have been duly executed by an authorized representative of both ADT and Subcontractor. Subcontractor shall sign this Agreement in the exact form as submitted and return to ADT within ten (10) days. If the aforesaid conditions are not met by Subcontractor, then this Agreement and ADT's offer to contract hereunder may be cancelled, unless ADT shall modify in writing, the conditions and/or extend the time set forth herein.

**38. Headings.** The headings in this Agreement are included for convenience only and shall not be taken into consideration in any construction or interpretation of this Agreement or any of its provisions.

**39. Opportunity To Seek Counsel.** Subcontractor acknowledges that Subcontractor has had an opportunity to consult with an attorney prior to executing this Agreement.

**40. Entire Agreement.** This Agreement together with any exhibits or attachments hereto constitutes and represents the entire agreement between the parties hereto and supersedes any prior negotiations, representations, understandings or agreements, written or oral,

Master Agreement for Subcontracting Services - 9

Copyright 2005-2007 ADT Security Services, Inc. All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08



between the parties hereto respecting the subject matter hereof.

**41. Disputes.** The parties shall use the following procedures as a condition precedent to either party pursuing other available remedies:

**(a)** The parties agree to make a good faith effort to mutually resolve any dispute as quickly as practicable and the parties agree to provide the other with written notice of any dispute within one (1) business day of the action causing the dispute.

**(b)** If the parties have not resolved the dispute within thirty (30) days of receipt of said notice, the parties' representatives shall submit the dispute to one of their senior-level executives or other authorized representative for review and simultaneously notify the other party in writing thereof. A meeting shall be held within ten (10) business days after receipt of such notice of submission which is to be attended by such senior-level executives or other such authorized representative(s) of the parties to attempt in good faith to negotiate a resolution of the dispute.

**(c)** If, within ten (10) business days after such meeting, the parties have not succeeded in negotiating a resolution of the dispute, either party may initiate legal action in a court of competent jurisdiction.

**(d)** During the pendency and conduct of any litigation, ADT and Subcontractor shall continue to perform their respective obligations under the Agreement.

**(e)** The rights and obligations of the parties under this provision shall survive completion or termination of this Agreement.

**42. Entire Agreement.** This Agreement and its attachment(s) set forth the entire agreement between the parties and supersedes any and all prior or contemporaneous agreements of the parties with respect to the    subject matter contained herein. ADT shall not be bound by, and ADT specifically objects to, any term, condition, or other provision inconsistent with or in addition to any provision of this Agreement that is submitted by Subcontractor in any correspondence or any other document, unless ADT specifically agrees to such provision in a written instrument signed by an authorized representative of ADT. No change, amendment, or modification of any provision of this Agreement shall be valid unless set forth in a written instrument signed by both parties.

**43. Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall together constitute but one and the same agreement.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first written above.

ADT SECURITY SERVICES, INC. ("ADT")

By: _Shannon Ackerman_
        (Signature)

Name Printed: _Shannon Ackerman_

Its: _Authorized Designee_
    Vice President or Authorized Designee

Arrow Security ("Subcontractor")

By: _Alex Caro_
        (Signature)

Name Printed: _Alexander J. Caro, Jr._

Its: _President_
    Proprietor / Owner / Vice President

Copyright 2005-2007 ADT Security Services, Inc. All rights reserved.
New Master_Agreement_for_Subcontracting_Services 4-9-08

**tyco**
Fire &
Security

**ADT**

<u>EXHIBIT A</u>
<u>SUBCONTRACTOR / VENDOR PRE-QUALIFICATION QUESTIONNAIRE</u>

**Dear Prospective ADT Subcontractor:**

Thank you for your interest in providing subcontracting services to ADT Security Services, Inc. ("ADT").
In order to be considered for and be qualified as an Approved ADT Subcontractor, you must complete this
form and return it with all other required documents to:

    ADT Security Services, Inc.
    Subcontractor Labor Department
    265 Thruway Park Drive
    West Henrietta, New York 14586
    Phone:
    Fax:  585-321-4821

**A.  GENERAL INFORMATION:**

Date of Response:

Name of Company:
List d/b/a (if any): _Arow Security, Inc  d/b/A  Arrow Security_
Street Address: _60  Knickerbocker Ave_
_Bohemia_ (City)　　_NY_ (State)　　_11716_ (Zip)
Mailing Address: _same  as  above_
(City)　　(State)　　(Zip)

Phone: _631-675-2430_　Fax: _631-675-2431_
Contact : _Thresa Cooke_　Phone: _631-675-2430_　Cell Phone: ___　E-mail: _tcooke@arrowsecurity.net_
Contact _Richard Tremblay_　Phone: _631-675-2430_　Cell Phone: ___　E-mail: _rich@arrowsecurity.net_
Company Website Address (if any): _www.arrowsecurity.net_

How many people does your Company presently employ:
Main Office _25_　Field Supervisory _25_　Technicians _N/A_

Is your Company:
☐ MBE　☐ WBE　☐ DBE　MBE/WBE/DBE Certified by: ___
　(Please attach copies of all certifications.)

Is this address the:
☐ Branch Office　☒ Main Office　☐ Regional Office

Name of Parent Company: _N/A_

Address of Parent Company: _N/A_

Year Company Started: ___　Type of Company:　☒ Corporation
　☐ Limited Liability Company
　☐ Sub Chapter S Corporation ☐ Partnership
State of Formation: _New York_　☐ Sole Proprietorship
　Date of Formation: _5/15/1995_
Contractor / Business License #: ___　State: ___　Expiration: ___　(Attach list if needed.)

State Sales Tax Registration Number: ███████　(Attach list if needed)

State Unemployment Insurance Number: ███████　(Attach list if needed)

Federal Employer ID Number: ███████

**B.  OWNERSHIP INFORMATION:**

List the Company owners, officers, major shareholders (major shareholder means persons owning 5% or more of
the stock of your Company): (attach list if necessary):

| | Name | Driver's  License No. or SSN | Position | Percent Owned |
|---|---|---|---|---|
| (1) | Alexandr J Caro Jr. | ███████ | President | 0% 100% |
| (2) | | | | 0% |
| (3) | | | | 0% |
| (4) | | | | 0% |
| (5) | | | | 0% |

Master Agreement for Subcontracting Services
Exhibit A - 1
Copyright 2005 ADT Security Services, Inc.  All rights reserved.

*tyco*

Fire &
Security

**ADT**

**C.   CURRENT BACKGROUND INFORMATION:**

Is your Company or any of its owners, officers or major shareholders currently involved in any arbitration or litigation?

☐Yes   ☒No

If yes, please explain: _____

Does your Company have any outstanding judgments or claims against it?   ☐Yes   ☒No

If yes, please explain: _____

Please list any pending litigation brought against the Company asserting that it failed to pay anyone.

_____
_____
_____

List any subsidiaries and/or affiliates of your company: *(Attach list if necessary.)*

| | Company Name | Ownership | Type of Company |
|---|---|---|---|
| (1) | _____ | _____ | _____ |
| (2) | _____ | _____ | _____ |
| (3) | _____ | _____ | _____ |

**D.   HISTORICAL BACKGROUND INFORMATION:**

Under what other names has your Company operated? *(Attach list if necessary.)*

Aron Security Inc.   A-Aron Security Inc.

Has your Company or any of its owners, officers or major stockholders ever petitioned for bankruptcy within the past ten years, defaulted, or been terminated on a contract awarded to you?   ☐Yes   ☒No

If yes, please explain:

_____
_____

Have any of the owners, officers or major stockholders of your Company ever been indicted or convicted of any felony or other criminal conduct?   ☐Yes   ☒No

If yes, please explain:

_____
_____

Have any of the owners, officers or major stockholders of your Company ever been investigated or found to have committed a violation of any federal, state, or local laws?   ☐Yes   ☒No

If yes, please explain:

_____
_____

Has your Company or any owners, officers or major stockholders ever been suspended, disbarred or otherwise precluded from pursuing public work or ever been found to be non-responsive by a public agency?   ☐Yes   ☒No

If yes, please explain:

_____
_____

Has your Company ever had a claim made against it for improper, delayed, defective or non-compliant work or failure to meet warranty obligations?   ☐Yes   ☒No

If yes, please explain:

_____
_____

Please list any completed litigation brought against the Company asserting that it failed to pay anyone.

N/A
_____
_____

Master Agreement for Subcontracting Services
Exhibit A - 2

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

**tyco**

Fire &
Security

**ADT**

### E.   FINANCIAL INFORMATION:

**Attach a copy of your latest audited financial statement.** If you do not have audited financials, please provide a copy of
your latest Federal Tax Return. Your financial statement is strictly for evaluating your application to become an ADT
Approved Subcontractor and will be treated confidentially.        If the attached financial statement is not for the
identical Company named above, explain the relationship and financial responsibility of the Company whose financial
statement is provided:

### F.   BANKING & CREDIT:

Name of your Bank: *Commerce Bank*
Address: *251 E. Main St, Patchogue, NY 11772*
Phone: *(631) 289-1026* Contact Person: *Donna*
Amount of line of credit: $ *75,000.00* Amount Available: $ *30,000.00* Expiration date: *None*

Are there any open UCC filings against any Company assets? If yes, please explain:
*No*

How is credit secured?: _____

What is Company's Dunn & Bradstreet Number?: ████████
D&B Rating: _____   Pay Record: _____   Date of Rating: _____
Remarks: _____

Name of Surety: *Colonial Surety Company*
Key Contact Person/Phone: *Jodie Kent*
Bonding Capacity: Per Job $ *500,000.00*        Aggregate: $ *1,000,000.00*

List three current major suppliers:

(1)  Name:    *Wright Express*
     Address:  *Po Box 6293 Carrol Stream, IL 60197-6293*  Telephone: *207-523-7057*
     Contact:  *Keith Thomas*
(2)  Name:    *Central Insurance*
     Address:  *350 Motor Pkwy, Hauppauge, NY*  Telephone: *631-891-1100*
     Contact:  *Kim Fasciana*
(3)  Name:    *Caro Management*
     Address:  *34 E. Main, Smithtown, NY*  Telephone: *631-383-9758*
     Contact:

List three current contractors you do business with:

(1)  Name:    *ADT*
     Address:  *50 Republic Road Farmingdale NY*  Telephone: *631-501-8806*
     Contact:  *Glen Smith*
(2)  Name:    *Nassau BOCES*
     Address:  *100 Haskett dr Syosset NY 11791*  Telephone: *516-396-2500*
     Contact:  *Tom Roccanova*
(3)  Name:    *Middle Country Schools*
     Address:   Telephone:
     Contact:  *Frank Fiorino*

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

**tyco**

Fire &
Security

**ADT**

**G. TRADES:**

Please list the type of work you are interested in performing and the geographic location(s) you would work in:

| Description | Geographic Location |
| --- | --- |
| _Alarm Response_ | _United States_ |

Indicate the size of project you are most competitive in performing (enter 1). Show in preference order (2,3,...) other size projects you are capable of performing:

| | | | |
| --- | --- | --- | --- |
| Under $5,000 | | $50,001 - $100,000 | |
| $5,000 - $25,000 | | Larger than $100,000 | |
| $25,001 - $50,000 | | Other | |

List labor unions that you have entered into collective bargaining agreements with: *(Attach list if necessary.)* _N/A_

| Local Number | Union Name | Agreement Expires on (date) |
| --- | --- | --- |
| | | |

**H.   PERSONNEL, QUALIFICATIONS & TRAINING:**

*List key office personnel and field supervisors – please indicate if you have security and/or alarm industry experience: (Attach list if necessary.)*

| | Name | Position (Manager, Technician, etc.) | Years of Experience Burglar Alarm | Fire Alarm | Electrical Contract or | Patrol or Guard Service |
| --- | --- | --- | --- | --- | --- | --- |
| (1) | AJ Caro | President | | | | 13 |
| (2) | Theresa Cooke | General Manager | | | | 5 |
| (3) | Richard Tremblay | Account Exec. | | | | 19 |
| (4) | Bill Seeger | Senior Field Service | | | | 30 |
| (5) | Mike Knoop | Senior Alarm Repair | | | | 10 |

Is the company licensed as a general, electrical or specialty contractor? *(Attach copies of all pertinent business licenses.)*

_No_

Trade Association Memberships:

_ASIS International_

List local or national accredited training programs in which you participate:

**I.   ALARM & SECURITY INDUSTRY EXPERIENCE:**

How many years has the company been in the security and/or alarm business?    _12 years_

What kinds of security alarm equipment (Ademco, Silent Knight, Burle, Casi-Rusco, etc.) is your Company qualified to install, inspect and/or service? *(Attached list if necessary.)*

| | Manufacturer / Brand | Years Experience | Trained or Manufacturer-Certified? |
| --- | --- | --- | --- |
| (1) | | | |
| (2) | | | |
| (3) | | | |
| (4) | | | |
| (5) | | | |

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

*tyco*

Fire &
Security

*ADT*

**J.   SERVICE AND/OR INSTALLATION WORK:**

How many accounts does your company service now?

How many service and/or installation jobs does your company now complete daily?                    _____

How many more jobs could your company handle each business day and still meet ADT's goals for      _____
timely service for its customers?

Do you offer 24 hour emergency service? *(Required in some areas.)*

☐ Yes                              ☐ No

Do you provide Saturday service as a normal business day? *(Required in some areas.)*

☐ Yes                              ☐ No

**K.   COMPUTER CAPABILITIES:**

ADT Approved Subcontractors may receive requests for service via postings to an ADT Website.  To participate in the electronic system, your Company must have a combination of computer, peripherals and software that will allow you to:

-   Access the Internet, download, and print files from it (high speed access is desirable).
-   Open and use Excel spreadsheets.
-   Receive e-mail.

Does your company now have the computer capabilities described above?

☑ Yes                              ☐ No

If no, do you intend to secure such capabilities in the near future?  If yes, please state when.

☐ Yes                              ☐ No          Date Anticipated: _____

**L.   SAFETY:**

Does your Company have a written safety policy? ☑ Yes          ☐ No

Does your Company hold regular documented safety meetings? ☑ Yes          ☐ No

Does your Company provide safety training for all employees? ☑ Yes          ☐ No

Does your Company have any other safety programs? *(If yes, please describe.)* ☐ Yes  ☑ No

Describe: _____

What is your Company's workers' compensation Experience Modification Rate ("EMR") for the past three years?

1.0

Has the Company ever been investigated for, or found to have committed, a serious OSHA violation (see:
www.osha.gov/oshstats/)? ☐ Yes          ☑ No

If yes, please explain: _____

**M.   DRUG AND BACKGROUND SCREENING:**

Does your Company currently provide drug and criminal background screening for all employees? ☑ Yes  ☐ No

If you answered no, please note that ADT requires all Subcontractor employees to meet or exceed ADT's substance and criminal background screening prior to commencing any work.  Is your Company willing to abide by ADT's policy? *(A copy of ADT's policy is attached.)*

**N.   TRADE REFERENCES:**

Attach a list of current major projects giving name of project, address, owner, architect, general contractor, contract amount, scope of work and scheduled completion. (Include contact people and phone numbers.)

Attach a list of completed major projects giving name of project, address, owner, architect, general contractor, contract amount and scope of work.  (Include contact people and phone numbers)

**O.   INSURANCE:**

Does your Company carry insurance policies that meet or exceed the requirements set forth in the attached insurance specifications? ☑ Yes                    ☐ No

If no, please explain: _____

Master Agreement for Subcontracting Services
Exhibit A - 5

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

*tyco*

Fire &
Security

**ADT**

P.  MISCELLANEOUS:

Please include any additional information you feel is important in the evaluation of your company for  inclusion in the
ADT Approved Subcontractor program:

_____

_____

_____

**COMPANY CERTIFICATION**

I am an officer, director, or owner of the Company and have sufficient knowledge to complete this questionnaire.  I have
attempted to answer all questions in a full and complete manner to assure that the answers are not in any respect
misleading.  I recognize that ADT will be relying on the accuracy of the information supplied in the responses in this
questionnaire when deciding whether to permit the Company to bid and in awarding work to the Company.

Dated at (location): Bohemia NY      the  14th  day of April 20 0 8
                     (City & State)                     (month)              (year)

Name of Company: Army Security

Completed by:  _____   ALEXANDER J. CARO PRESIDENT
                     (Signature)                     (Name Printed)

Title:  _____
                     (must be signed by an officer of the Company)

**NOTARY ATTESTATION REQUIRED**

STATE OF    New York           )
                                )  SS.
COUNTY OF   Suffolk            )

Alexander J. Caro Jr.   being duly sworn, deposes and says that the information provided herein
is true and sufficiently complete so as to not be misleading.

Subscribed and sworn before me this  14th  day of  April               2008

Notary Public:  _____

Residing at (city & state):  Nesconset, NY

My commission Expires:  2/16/11

WILLIAM G. GOODE
Notary Public, State of New York
No. 02GO6053781
Qualified in Queens County
Commission Expires January 16, 2011

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

**EXHIBIT B**

**WORK AUTHORIZATION**

| | |
|---|---|
| **SUBCONTRACTOR NAME:** | **Arrow Security** |
| **SUBCONTRACTOR NUMBER:** | **Oracle #15494** |
| **NAME OF PROJECT:** | **Guard Response Services under $25,000** |
| **PROJECT BEGIN DATE:** | **To be determined by local office** |
| **PROJECT COMPLETION DATE:** | **To be determined by local office** |
| **LOCATION OF PROJECT:** | **States of PA, NY & NJ (licensing may apply)** |
| **ADT PROJECT SUPERVISOR NAME AND CONTACT INFORMATION** *(CHANGE ORDERS MUST BE APPROVED AND SIGNED BY THIS PERSON)*: | Shannon Ackerman 585-359-5883 |

**A. SCHEDULE:** Subcontractor shall complete the Work according to the schedule provided above. ADT shall review the Work and report any deficiencies to Subcontractor.   Subcontractor will correct the deficiencies and insure that the Work has been completed to ADT's satisfaction and in conformance with all specifications on or before Month, 2008.

**B. DESCRIPTION / SCOPE OF WORK:**

*Guard Response Services under $25,000*

**C. FEES:**  ADT shall pay Subcontractor for the Work as follows:

1) Lump Sum: $0.00

2) Milestone Payments: $0.00 payable upon completion of X% of the work.

3) Unit Payments.  Units defined as _____ paid as $0.00 per unit.

> The invoicing by Subcontractor for the Work and the payment of such invoices by ADT shall be done in accordance with the terms set forth in this Agreement.  In the event that the guidelines established by ADT are changed or altered by ADT after the project has begun, Subcontractor will, before continuing with the Work, present a written price adjustment with an explanation of additional costs, if any, to ADT. Any such modifications in project scope or cost must be approved in writing by ADT prior to commencement of the Work as modified.

4) Subcontractor will carefully review all the Work and material specifications.

> **IN WITNESS WHEREOF**, this Exhibit has been accepted and agreed to by the parties hereto as evidenced by their signature below as of the Effective Date of the Agreement.

**ADT SECURITY SERVICES, INC. ("ADT")**          Arrow Security ("Subcontractor")

By: *Shannon Ackerman*          By: *[signature]*
　　　　(Signature)　　　　　　　　　　　　　　(Signature)

Name Printed: Shannon Ackerman          Name Printed: Alexander J Caro, Jr.

Its: Authorized Designee          Its: President
　　Vice President or Authorized Designee　　　　　　Proprietor / Owner / Vice President

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

**EXHIBIT C**

**MULTIPLE SERVICES OPERATIONAL SUMMARY**

| | |
|---|---|
| SUBCONTRACTOR NAME: | N/A |
| SUBCONTRACTOR NUMBER: | N/A |
| NAME OF PROJECT: | N/A |
| PROJECT BEGIN DATE: | N/A |
| PROJECT COMPLETION DATE: | N/A |
| LOCATION OF PROJECT: | N/A |
| ADT PROJECT SUPERVISOR NAME AND CONTACT INFORMATION *(CHANGE ORDERS MUST BE APPROVED AND SIGNED BY THIS PERSON)*: | N/A |

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

## I. ALL SUBCONTRACTORS

| ☒ Service/Residential and Small Installation | ☒ Medium to Large Installation | ☒ Inspections | ☒ Guard or Patrol Response |
|---|---|---|---|

**THE FOLLOWING PROVISIONS APPLY TO <u>ALL</u> SUBCONTRACTORS.**

**A. <u>SERVICES</u>:** Services for installation, inspection, security guard response or patrol, equipment repair, and/or maintenance service (the "Work") may be requested by ADT issuing written document(s) as described in Paragraph I., B. below.

**B. <u>JOB REQUESTS</u>:** ADT shall request services by issuing a written document(s) detailing the scope of the work and the fees to be paid to the Subcontractor. These written document(s) may include any form of work or service order then in use by ADT, such as:

- Service Ticket,
- Job Summary,
- Service Job,
- Work Order/Invoice,
- Service Ticket/Invoice,
- Work Order,
- Change Orders,
- Customer Worksheet
- Rider for Additional Service
- Estimating / Customer Order Worksheet (Form 2275)
- Customer Blue Prints

The foregoing documents when presented individually or in combination by ADT to Subcontractor along with a completed Work Authorization (<u>Exhibit B</u>), shall constitute a "Work Order" as discussed in the Agreement.

Upon invoicing ADT for the Work completed, Subcontractor must reference the forgoing document(s) as part of the Subcontractor invoicing process. Any services required outside those requested within the initial scope of the work shall require additional approval by ADT prior to commencing the Work.

**C. <u>SUBMITTING SUBCONTRACTOR INVOICES</u>:** Unless otherwise set forth in the Contract Documents, Subcontractor shall submit Subcontractor invoicing and a signed Customer acknowledgement form within thirty (30) business days after completing the Work. Subcontractor acknowledges that ADT is under no obligation to pay invoices not submitted within the foregoing timeframe. ADT and Subcontractor mutually agree to work cooperatively to resolve any disputed Subcontractor invoices within forty-five (45) business days of receipt by ADT. "Subcontractor invoices (in the case of a disputed invoice, the undisputed portion of such invoice) shall be payable within thirty (30) days of receipt by ADT. ADT shall be entitled to apply a two percent (2%) discount with respect to any invoice payment remitted to Subcontractor within ten (10) days of the invoice date."

**D. <u>EXPENSES</u>:** Subcontractor is solely responsible for Subcontractor's own business and travel expenses and is not eligible for reimbursement of any such expenses unless previously approved in writing by ADT. ADT shall reimburse Subcontractor for such pre-approved expenses upon receipt of invoices (in a form approved by ADT) accompanied by actual receipts itemizing and evidencing these expenses.

**E. <u>TRAVEL CHARGES</u>:** ADT will reimburse Subcontractor for travel in the following geographical areas: List the geographical areas here.

Approved travel charges will be paid as follows:

$0.00  per mile beyond 0.00 miles from the Subcontractor's office.

$0.00 per hour for distances greater than 0.00

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

## II. SERVICE / RESIDENTIAL AND SMALL INSTALLATION

| ☒ Service/Residential and Small Installation | ☐ Medium to Large Installation | ☐ Inspections | ☐ Guard or Patrol Response |
|---|---|---|---|

**THE FOLLOWING ADDITIONAL PROVISIONS APPLY TO SERVICE/RESIDENTIAL AND SMALL INSTALLATION SUBCONTRACTORS.**

**A. SCHEDULING:** Subcontractor shall contact ADT's Customer to schedule the Work within one (1) business day of receiving a request for the Work from ADT. If, when the Subcontractor is scheduling the Work with ADT's Customer, the Customer requests an appointment date greater than two (2) business days out, Subcontractor shall re-confirm that schedule with ADT's Customer within 24-hours of the scheduled appointment date and time.

**B. TIMELINESS:** Subcontractor shall arrive at the Customer site at the scheduled time as agreed with ADT's Customer. If for any reason Subcontractor cannot meet the scheduled date and time, Subcontractor must make every reasonable effort to contact ADT's Customer prior to the scheduled time to re-schedule with ADT's Customer. The ADT National Dispatch Center (NDC) must be notified that the previously committed schedule cannot be met. Subcontractor, upon contacting ADT's Customer and rescheduling, shall notify the NDC of the revised scheduled date and time.

**C. SERVICES DELIVERY:** Subcontractor shall perform the Work within three (3) business days of receiving a request for the Work from ADT, or at any other designated time frame as directed by ADT. ADT recognizes that scheduling conflicts may exist with Customer schedules which may result in not all requests for the Work being completed within three (3) business days. Nevertheless, Subcontractor shall make every reasonable effort to complete service delivery to ADT's Customers on 80% of all accepted requests for the Work within the three (3) business day period.

**D. SERVICES BACKLOG:** Subcontractor shall make every reasonable effort to ensure that no more than 5% of the requests for the Work that are classified as outstanding (not complete) are no older than five (5) business days. Requests for the Work that are older than ten (10) business days shall be referred to the National Dispatch Center (NDC) for additional instructions and further clarification.

**E. ON AND OFF TEST CONDITION/TEST SIGNALS:** Subcontractor shall, upon arrival at the Customer site, contact ADT's voice response terminal (VRT) and place the Customer's system in test condition. In performance of the Work, the Subcontractor must send a test signal on any and all protective devices that were repaired, serviced, installed, or upgraded during the performance of the Work. The Subcontractor shall, after completing the Work, remove the system from test condition and place the Customer site back into service and normal operating condition.

**F. FIRST TIME FIX:** Subcontractor shall maintain sufficient repair parts inventory to allow it to achieve an eighty-five percent (85%) first time fix ratio for the ADT Customer equipment for which it provides equipment repair/maintenance services. As used herein, the term "first time fix" means Subcontractor will not need to make any return visits for the same equipment problem within 30 days of providing equipment repair and/or maintenance services in response to the initial request for the Work. Return site visits for failure to have sufficient inventory to effect repairs will be paid at one-half (1/2) the hourly rate. Sufficient parts inventory shall include repair parts that Subcontractor has experienced to be frequently defective and require replacement, including, but not limited to, alarm control panels, motion detectors, keypads, alarm sirens, glass break detectors and other items as experience dictates and shall include items classified as supplies, including, but not limited to, contacts, wire, wire fasteners, electrical boxes, and transformers.

**G. SUBCONTRACTOR TOOLS AND EQUIPMENT:** Subcontractor shall obtain and maintain, at a minimum, the following tools and equipment: telephone, cell phone, 24/7 fax number, e-mail address, access to the Internet, and sufficient repair parts inventory (as described herein in Section II.M(3).

**H. WARRANTY:** Subcontractor warrants the workmanship of the Work to ADT for a period of thirty (30) days from the date of completion of the Work.

**I. AFTER HOURS/HOLIDAY/EMERGENCY SERVICE:** Subcontractor (shall / shall not) perform the Work after "normal business hours" as defined below in Section II.M(1).

(1) The term "Holiday" means the U.S. Federal Holidays observed by the United States Office of Personnel Management. For a current list of U.S. Federal Holidays please visit http://www.opm.gov/fedhol/index.asp.

(2) "Emergency Service" shall mean Subcontractor is on call twenty-four (24) hours/day and seven (7) days/week, and that the Subcontractor shall arrive at the Customer site within three (3) hours, distance permitting, of receiving a request for the Work from ADT. Subcontractor shall provide and maintain with ADT the necessary contact phone number(s) and Subcontractor employee(s) name(s) to dispatch for After Hours/Holiday/Emergency Service.

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

**J. CUSTOMER INVOICE DOCUMENT:**  Subcontractor shall bill Customer at ADT retail prices on such form as approved and in use by ADT at the time services are rendered.  Should Customer invoice form be a multiple part document, Subcontractor shall distribute copies based on ADT policy at the time services are rendered.

**K. ADT RETAIL CUSTOMER PRICING:**  ADT retail pricing to its Customer is for the first **one-half hour (30 minutes)** and thereafter in **quarter hour (15 minutes) increments.**  Subcontractor will always bill the services rendered at the then prevailing ADT retail rate.

**L. EQUIPMENT MARK-UP TO ADT CUSTOMER:**  Repair parts are priced to the ADT Customer at cost multiplied by **2.5.**

**M. CUSTOMER FINANCIAL RESPONSIBILITY:**  The request for the Work will indicate Customer's financial responsibility.  Subcontractor shall price the Work to Customer as indicated in this document.  Failure to follow pricing instructions shall result in an adjustment to Subcontractor's invoice in the form of a non-payment memo or other such form in use by ADT at the time services are rendered.

    **(1) Maintenance Services:**

        (a) ADT shall pay Subcontractor a fixed rate of $0.00 for any properly completed request for the Work or as set forth in Paragraph M(2) below.

        (b) Unless otherwise agreed by the parties under a specific request for the Work, ADT shall pay Subcontractor for on job site-time on an hourly (one hour minimum) basis.  If performance of maintenance services, the Work, exceeds one (1) hour on job-site time, ADT shall pay for each additional fifteen (15) minute increment.  If the Subcontractor provides After Hours/Holiday/Emergency services, as described in the request for the Work, ADT shall pay Subcontractor a one (1) hour minimum (on job-site time) at the agreed After Hours/Holiday/Emergency rate.  Beyond one (1) hour, ADT shall pay for each additional fifteen (15) minute increment.

        Normal Business Hours        0 AM to 0 PM Monday through Friday

        After Hours/Holidays 0 AM to 0 PM

        The rates are as follows:

| First Hour (1 Hour Minimum) | Each Additional (15 Min. Increment) |
|---|---|
| Normal Business Hours | $0.00 per 15 Minutes |
| After Hours / Holidays / Emergency $0.00 /Hour | $0.00 per 15 Minutes |

    **(2) Installation and Upgrade Services:**  Unless otherwise agreed by the parties under a specific Work Order, ADT shall pay Subcontractor a fixed rate for installation of a wireless or hardwire basic package, consisting of one control panel, one keypad, one motion or glass break sensor, two door sensors and one audible device.  ADT shall pay Subcontractor for each additional wireless or hardwire device installed beyond those contained in the basic package.

| Hardwire Kit $0.00 | $0.00 each additional device |
|---|---|
| Wireless Kit $0.00 | $0.00 each additional device |

    **(3) Material:**  If the Subcontractor supplies repair/upgrade parts from Subcontractor's own inventory to complete the Work, ADT shall reimburse Subcontractor for any Subcontractor supplied part(s) at the Subcontractor's cost plus 0% as evidenced by actual receipts of Subcontractor's costs for the parts. For ADT to consider reimbursement, Subcontractor's actual receipt(s) must be attached to Subcontractor's invoice submitted to ADT for payment consideration.

    **(4) Customer "No Shows":**  Should the ADT Customer fail to honor the agreed scheduled appointment date and time, Subcontractor shall be paid 30 minutes of Subcontractor's time at the applicable hourly rate. However the Subcontractor must demonstrate that there was a confirmed or reconfirmed scheduled date and time.

    **(5) Customer 3-Day Right of Rescission.**  In the event that the ADT Customer elects to exercise his/her 3-Day Right of Rescission after an installation appointment has been scheduled, Subcontractor shall be paid 30 minutes of Subcontractor's time at the applicable hourly rate. However the Subcontractor must demonstrate that there was a confirmed or reconfirmed scheduled date and time and must tender the cancelled ADT Customer contract to ADT within five (5) business days of the date of cancellation.

**N. SALES TAXES:**  Purchase of services, the Work, from Subcontractor will be treated as a purchase for resale.  Accordingly, Subcontractor is exempt from collecting state and local sales tax on the sale of

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

chargeable services to ADT and will be provided (upon request) with a sales tax resale exemption certificate where applicable.



Copyright 2005 ADT Security Services, Inc.  All rights reserved.

Master Agreement for Subcontracting Services
Exhibit C - 5

## III. MEDIUM TO LARGE INSTALLATIONS:

| ☐ Service/Residential and Small Installation | ☒ Medium to Large Installation | ☐ Inspections | ☐ Guard or Patrol Response |
|---|---|---|---|

**THE FOLLOWING ADDITIONAL PROVISIONS APPLY TO MEDIUM TO LARGE INSTALLATIONS.**

**A. SERVICES:** ADT shall assign a Project Supervisor to provide the Subcontractor all the information and documentation about each project necessary to bid or complete the Work.

(1) **Bid Acceptance:** Acceptance of the Subcontractor's bid shall be evidenced by ADT issuing a written document(s) setting forth the project specifications and description of the Work.

(2) **Compensation:** Compensation shall be mutually agreed upon between the parties and set forth in the Bid Acceptance documents referenced above.

(3) **Change Orders:** Any changes in the description for the Work must be in writing and must be approved and signed by ADT prior to beginning the modified the Work.

(4) **Time:** Time is of the essence to complete the Work.

(a) Subcontractor agrees to punctually and diligently perform all parts of the Work at the time scheduled by ADT, which shall be subject to change by ADT as deemed necessary or convenient to the overall progress of the Work. Subcontractor shall also, as soon as practicable, prepare and obtain approval of all shop drawings and samples required by the Work, and do all things necessary and incidental to the prosecution of the Work at the proper time.

(b) No extension of time specified for completion will be made in consideration of delays or suspensions of the Work due to the fault or negligence of the Subcontractor. No extension of time, for any cause whatever, shall be claimed by the Subcontractor unless Subcontractor shall have made written request to ADT for such extension within 48 hours after the cause for such extension occurred. No grant of an extension shall be valid or effective unless it is in writing signed by ADT.

(5) **Acceptance of the Work:** ADT shall, at its discretion, inspect the Work of the Subcontractor during and upon completion of the Work, and shall promptly report, in writing, any deficiencies to the Subcontractor. Subcontractor will promptly correct the deficiencies and ensure that the Work is completed on schedule and completed to ADT's satisfaction.

(6) **Warranty:** Subcontractor warrants the delivered services the workmanship to ADT for a period of ninety (90) days from the date of service delivery.

(7) **Prime Contract:** Subcontractor acknowledges the availability of a complete copy of the Prime Contract at ADT's local field office, and acknowledges Subcontractor's responsibility to have read all portions therein pertaining to the Work. Subcontractor agrees to be bound to ADT by the terms of said Prime Contract insofar as each and every part thereof is applicable to this Agreement. Subcontractor herewith assumes toward ADT any and all obligations applicable to Subcontractor's Work which, by the foregoing Prime Contract ADT assumes toward the ADT Customer or any other party in interest.

(8) **Payment and Performance Bonds:** If required by the Prime Contract or by ADT, before entering upon the performance of the Work, the Subcontractor shall furnish Payment, Performance and Labor and Materials Bonds, each in the amount of one hundred percent (100%) of the contract price, as security for the faithful performance and payment of all the Subcontractor's obligations under the Agreement and Prime Contract. These Bonds shall remain in effect at least until one year after the date of completion of the Work, except as otherwise provided by law or by the Prime Contract. Subcontractor shall also furnish such other bonds as are required by ADT. If the surety on any bond furnished by Subcontractor is declared a bankrupt or becomes insolvent or its right to do business is terminated in any state where any part of the Work is located, Subcontractor shall within seven (70 days thereafter substitute another bond and surety, which must be acceptable to ADT and/or the ADT Customer. All bonds required by the Prime Contract to be purchased and maintained by Subcontractor shall be obtained from surety companies that are duly licensed or authorized in the state in which the Work is to be performed to issue bonds for the limits so required. Such surety companies shall also meet such additional requirements and qualifications as may be provided in the Prime Contract.

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

## IV. INSPECTION WORK:

| ☐ Service/ Residential and Small Installation | ☐ Medium to Large Installation | ☒ Inspections | ☐ Guard or Patrol Response |
|---|---|---|---|

THE FOLLOWING ADDITIONAL PROVISIONS APPLY TO INSPECTION WORK.

**A. SERVICES:** Subcontractor shall perform alarm system inspections, the Work, for those Customers designated by ADT. The Work shall be made at the intervals designated by ADT and the tests shall be made in accordance with the specific U.L. and/or N.F.P.A. standards specified by ADT.

If the Work is for a fire alarm panel, the alarm panel operation will be verified and the peripheral devices including smoke detectors, heat detectors, manual pull stations, waterflow switches, tamper switches, bells, horns, visible annunciators, valves and other applicable devices shall be tested at the frequency specified by ADT. Subcontractor shall test and replace batteries when necessary. Subcontractor shall immediately advise the ADT National Dispatch Center (ADT NDC) of any test failures or repairs necessary to the Customer's system.

Subcontractor shall provide ADT's Customer and ADT with a written record of the Work made on such document as specified by ADT hereinafter referred to as the "inspection report". The Customer will be asked to sign the inspection report to acknowledge completion of and the results of the Work. One copy of the inspection report will be left with the Customer and the signed original will be retained and provided to ADT along with Subcontractor invoicing. If ADT's Customer denies access, or desires the tests to be done at some later time, the matter will be referred to ADT. In the event a system failure or impairment is detected during the test, Subcontractor shall immediately notify ADT's NDC of the situation. This will be included on the inspection report and the Customer so notified when the Customer's representative is asked to sign the inspection report.

   (1) **Voice Response Terminal (VRT) Access Procedures:** The Subcontractor shall initiate each inspection by first calling the VRT. The Subcontractor will assign himself/herself to the Work through the Account Menu and indicate the test time. At the conclusion of the Work, the Subcontractor shall access the VRT and enter the Test Result Menu. The Subcontractor shall verify that the test signals sent from ADT's Customer site are identical to the test signals received. The Subcontractor shall, after completing the Work, remove the system from test condition and place the Customer site back into service and normal operating condition.

   (2) **ADT's Cause and Resolution Codes:** Subcontractor shall use the ADT standard Cause and Resolution Codes as designated by ADT for the Work performed.

   (3) **Timeliness:** Subcontractor shall perform the Work during the calendar month scheduled as designated by ADT.

   (4) **Compensation:** Compensation shall be mutually agreed upon between the parties and set forth as follows:

     (a) ADT shall pay the Subcontractor a fixed rate of $0.00 for any properly completed the Work. The fixed rate shall include _____ units or devices as herein defined. Performing the Work on additional units/devices shall be paid at the rate of $0.00 per unit/device.

Copyright 2005 ADT Security Services, Inc. All rights reserved.

(b) Inspection unit values are as follows:

| | Item or Device | Unit Value |
|---|---|---|
| 1. | Building (travel, paperwork, etc.) | 1 |
| 2. | Controls (McCulloh transmitter, etc.) | 1 |
| 3. | Aero (normal pump test) | 1 |
| 4. | Waterflow, Wet | 1 |
| 5. | Waterflow, Dry (includes air and flow) | 1 |
| 6. | Shut off Valves (OS&Y, PIV, BFY, wall valve) | 1 |
| 7. | Smoke Detectors (spot type) | 1 |
| 8. | Smoke Detectors (beam type) | 2 |
| 9. | Smoke Detectors (duct type) | 1 |
| 10. | Smoke Detector air cleaning | ½ |
| 11. | Smoke Detector disassembling & cleaning in place | 2 |
| 12. | Smoke Detector removal, disassembling & cleaning | 3 |
| 13. | Fire Thermostats | 1 |
| 14. | Manual Pull Stations | 1 |
| 15. | Each Supervisory Device (Exceptions: Gravity tanks calculated on a case by case basis) | 1 |
| 16. | Horns, Bells, Horn/Strobes, Strobes (normal condition devices) | 1 per 10 devices |
| 17. | Each Burglar Alarm Protection (visual & mechanical check) | ½ |
| 18. | Each Burglar Alarm Protection (complete set-up & test back to control set and possibly central monitoring station) | 1 |
| 19. | ADT Four Page Fire NFPA® Inspection Form F5011-01 | 1 |
| 20. | Municipal or Other Special Fire Forms | 1 |

B. **MATERIAL**: If the Subcontractor supplies repair/upgrade parts from Subcontractor's own inventory to effect completion of the Work, ADT shall reimburse Subcontractor for any Subcontractor-supplied part(s) at the Subcontractor's cost plus ten percent (10%) as evidenced by actual receipts of Subcontractor's costs. For ADT to consider reimbursement, Subcontractor's actual receipt(s) must be attached to Subcontractor's invoice submitted to ADT for payment consideration.

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

**V: GUARD RESPONSE SERVICES:**

| ☐ Service/Residential and Small Installation | ☐ Medium to Large Installation | ☐ Inspections | ☒ Guard or Patrol Response |
|---|---|---|---|

**THE FOLLOWING ADDITIONAL PROVISIONS APPLY TO GUARD AND/OR PATROL RESPONSE WORK.**

**A.  SERVICES:**  Subcontractor shall provide alarm response services and investigation, the Work, to alarms at ADT Customer's premises location as directed/dispatched by ADT.

    **(1)  The Work:**  Shall include, without limitation:

        (a)  Responding, as dispatched by ADT, to an alarm signal from an ADT Customer's premises ("Premises") unarmed with properly trained and licensed personnel ("Guard") between the hours of:

        Hours **TBD** PM to **TBD** AM – Monday through Friday

        Hours **TBD** PM to **TBD** AM – Saturdays, Sundays, Holidays*

        * Holidays mean U.S. Federal holidays observed by the United States Office of Personnel Management. For a current list, please visit http://www.opm.gov/fedhol/index.asp.

      (b) Conducting an Investigation of the Premises as follows:

          1. Exterior Investigation - A drive through of the parking facilities and any fenced site yard. An inspection of the building exterior and visual checks of doors and windows from his/her vehicle.  Guard will follow up by providing a physical check of all exterior doors and windows to determine if all are secure.

          2. Interior Investigation – If keys are provided, the Guard will enter the building and check for any signs of damages or forced entry. All interior doors will be checked to see if they are secure.

        (c) Guard will promptly notify the designated ADT representative of the results of the investigation.

        (d) ADT will notify Local Authorities if assistance is required.

**B. GENERAL AND REPORTING REQUIREMENTS:**

    (1)  Upon being dispatched by ADT, the Guard shall respond to the Alarm by arriving at the Premises where the Alarm activated as soon as lawfully possible.

    (2)  The Guard shall respond within two hours of dispatch unless otherwise specified under the UL requirements or local regulations. (*subject to negotiation based on instances of acts of God or other events such as wildfires or remote geography)

    (3)  The Guard shall call in to ADT his/her arrival at the Premises.

    (4)  Upon arrival, the Guard shall, together with the local police officer who will also be dispatched to the Premises, attempt to identify the cause of the Alarm and promptly notify ADT of such cause or, if no cause can be determined, promptly notify ADT that the cause is unknown.

    (5)  The Guard shall fill out a report on a form provided by ADT (ADT Service Ticket Form 524) or other such form as designated by ADT setting forth the Customer name and address, date, time, service request code and cause code of the Alarm, arrival time, and activity relating to the investigation at each Customer premises.  The original of the report will be mailed to ADT and the other will be left at the ADT Customer's premises where ADT's Customer shall receive the report.

**C. KEYS:**

    (1)  Keys provided to the Subcontractor will be kept in envelopes in a secure location and labeled so as not to identify the premises they unlock.

    (2)  All premises keys, if provided to Subcontractor, will be inventoried daily and signed for by the Guard who takes possession and custody of them.

    (3)  Used keys will be resealed in new envelopes with the time and date noted on the envelope.

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

(4) Subcontractor will be responsible for the costs associated with the replacement of any lost keys (which may include re-keying, if requested by the Customer).

**D. APPAREL AND APPEARANCE:** In addition to the Apparel and Appearance requirements set forth in the Agreement, Subcontractor agrees as follows:

(1) Subcontractor and all Subcontractor employees providing the Work in response to an ADT alarm will be in a neat, clean uniform clearly identifying Subcontractor's Response Company.

(2) All Subcontractor employees shall carry a photo identification clearly identifying them as an employee of Subcontractor.

**E. COMPENSATION:** The all-inclusive charges to ADT for the Work shall be as follows:

(1) Fixed charge totaling 60% of monthly average per district per month for performance of the Work, after which the subcontractor may charge a predetermined per run charge. *See pricing addendum.

(2) If invoicing as identified in Section V.E(3) above, includes the Work that has not been performed in accordance with Section V.A through D above, ADT, at its sole discretion, may withhold payment for each occurrence not meeting the criteria set therein.

(3) In the event that 20% of the responses for any given month were responded to outside of the two hour response time (or stated UL/locally regulated time), ADT will invoke a penalty of 20% on the entire invoice for that given month.

(4) In the event that 30% of the responses for any given month were responded to outside of the two hour response time (or stated UL/locally regulated time), ADT will invoke a penalty of 30% on the entire invoice for that given month.

(5) In the event that 50% of the responses for any given month were responded to outside of the two hour response time (or stated UL/locally regulated time), ADT will invoke a penalty of 50% on the entire invoice for that given month. *if level of service sustains at less than 50% for 3 months- ADT has the right to renegotiate the contract.

**IN WITNESS WHEREOF,** this Exhibit has been accepted and agreed to by the parties hereto as evidenced by their signature below as of the Effective Date of the Agreement.

| ADT SECURITY SERVICES, INC. ("ADT") | Arrow Security ("Subcontractor") |
|---|---|
| By: _Shannon Ackerman_ | By: _Alex J Caro Jr_ |
| (Signature) | (Signature) |
| Name Printed: _Shannon Ackerman_ | Name Printed: _Alexander J Caro Jr._ |
| Its: _Anthony Devaney_ | Its: _President_ |
| Vice President or Authorized Designee | Proprietor / Owner / Vice President |

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

**EXHIBIT D**
**SUBCONTRACTOR INSURANCE REQUIREMENTS**

**A. GENERAL CONDITIONS – ALL SUBCONTRACTORS:**

The Subcontractor shall purchase and maintain at the Subcontractor's own expense full and complete insurance on its performance of the Work as shown below.  Any insurance purchased should be by a carrier with a rating no lower than "A-" by A.M. Best.  Any deductibles or self-insured retentions must be declared to and approved by ADT.  At the option of ADT, the insurer shall reduce or eliminate such deductibles or self-insured retentions as respects ADT, or the Subcontractor shall provide a financial guarantee satisfactory to ADT guaranteeing payment of losses and related investigations, claim administration, and defense expenses.

Coverage's shall be maintained without interruption from date of commencement of the Subcontractor's Work throughout the end of the contract period or until the date of final payment and termination of any coverage which is required to be maintained until after final payment, whichever is later. All insurance policies, other than Professional Liability policies, shall be written on an occurrence basis.  If any Professional Liability policy is required, it may be written on a "claims-made" basis, but all "claims made" policies shall have a retrospective date of no later than the inception date of this contract.  In addition all insurance provided by the Subcontractor shall be primary and non-contributory to any insurance carried by ADT and/or ADT's Customer.

Subcontractor shall indemnify, defend and save harmless ADT, ADT's Customer, and the Owner or Lessee of the Work site and their respective parents, subsidiaries, agents, employees, servants, representatives, invitees, affiliates, directors, and officers from and against any and all losses, damages, claims, demands, costs, expenses, suits and liabilities, including but not limited to attorney's fees and costs of litigation that arise from:

(1) Injuries or death to persons or damage to property caused by Subcontractor's acts or omission to act, or the acts or omissions to act of those persons furnished by Subcontractor, or in any way arising out of the performance of this contract by Subcontractor, Subcontractor's agents, employees, or sub-subcontractors.

(2) Assertions or claims under Workers' Compensation or similar acts made by persons furnished by Subcontractor or of Subcontractor's subcontractors.

(3) Any failure by Subcontractor to perform any of Subcontractor's obligations under the Agreement.

Subcontractor shall provide certificates of insurance and any other documentation evidencing the foregoing insurance is in effect PRIOR to commencing any Work.  All certificates must provide thirty (30) days written notice to ADT at its Certificate Holder address, prior to any cancellations or modifications to the insurance.

**ADT Certificate Holder address is:**

ADT Security Services, Inc.
Subcontractor Labor Department
265 Thruway Park Drive
West Henrietta, New York 14586
Phone:
Fax:  585-321-4821

**B. ADDITIONAL CONDITIONS - PROJECTS (≤$25,000):**

Subcontractor, at its own expense, shall maintain during the term of the Agreement insurance policies evidencing the following minimum policy limits:

1) Worker's Compensation insurance as prescribed by applicable law or statute; or any such insurance protecting subcontractor from claims under workmen's compensation acts and other employee benefit acts, from claims for damages because of bodily injury, including death which may arise out of, or result from, the subcontractor's operations under this Agreement, whether such operations be by himself or by any sub-subcontractor or anyone directly or indirectly employed by any of them.

2) Employers' Liability insurance with limits of at least $500,000 for each accident/disease.

3) Comprehensive Auto Liability insurance with limits of at least $500,000 for bodily injury, including death, to any one person and $500,000 for each occurrence of property damage.

4) Comprehensive General Liability (including Products & Completed Operations coverage) insurance including Contractual Liability Coverage covering the contractual obligations accepted under this clause and, with limits of at least $1,000,000 for each occurrence of bodily injury, including death, and $1,000,000 for each occurrence of property damage.  The policy should carry a General Aggregate limit of no less that $2,000,000.

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

5) If security guard or security patrol services are being performed, the Subcontractor must evidence insurance with the following <u>additional</u> coverage:

   a. Crime and Fidelity Insurance, including third party fidelity coverage, with limits of at least $1,000,000. The Crime & Fidelity coverage shall name ADT as a Loss Payee. It is also acceptable for the Subcontractor or agent to issue a crime bond for $1,000,000, naming ADT as a Loss Payee.

   b. Care, Custody, and Control Liability coverage included in the Comprehensive General Liability policy with sub-limits of at least $500,000.

   c. If Guards are to be UN-ARMED:

     Professional Errors and Omissions Liability Insurance (Professional Security Services Liability) for Security Guards with limits of at least $1,000,000.

   d. If Guards are to be ARMED:

     i.General Liability coverage must be increased to $3,000,000 per occurrence for Bodily Injury, Personal Injury, and Property Damage covering the armed operations of all security guard personnel. If the use of firearms is covered under a special insurance policy, ADT will be named as an Additional Insured on that policy as well as on the other polices mentioned in this exhibit.

     ii.Professional Errors and Omissions Liability Insurance (Professional Security Services Liability) for Security Guards with limits of at least $3,000,000.

**NOTE: All such insurance specified in B.3, B.4, and B.5 shall include an endorsement naming ADT as an Additional Insured and Certificate Holder. In addition all insurance specified in B.1, B.2, B.3, and B.4 shall be Primary and Non-Contributory to any insurance carried by ADT or ADT's Customer and shall include a Waiver of Subrogation endorsement in favor of ADT and ADT's Customer.**

### C. ADDITIONAL CONDITIONS - PROJECTS (>$25,000):

Subcontractor, at its own expense, shall maintain during the term of the Agreement insurance policies with the following minimum policy limits:

1) Worker's Compensation Insurance as prescribed by applicable law or statute; or any such insurance protecting Subcontractor from claims under workmen's compensation acts and other employee benefit acts, from claims for damages because of bodily injury, including death which may arise out of, or result from, the Subcontractor's operations under this Agreement, whether such operations be by himself or by any sub-subcontractor or anyone directly or indirectly employed by any of them.

2) Employers' Liability insurance with limits of at least $500,000 for each accident/disease.

3) Comprehensive Auto Liability insurance with limits of at least $1,000,000 for bodily injury, including death, to any one person and $1,000,000 for each occurrence of property damage.

4) Comprehensive General Liability insurance including Contractual Liability Coverage covering the contractual obligations accepted under this clause, with limits of at least $1,000,000 for each occurrence of bodily injury, including death, and $1,000,000 for each occurrence of property damage. The policy should carry a General Aggregate limit of no less that $4,000,000. Additionally the insurance described in this paragraph must include coverage for explosion, collapse, and undermining (X,C,U) as well as coverage for damage or destruction off subsurface utilities, as well as coverage for Care, Custody, and Control with sub-limits of at least $500,000

5) Crime and Fidelity Insurance, including third party fidelity coverage, with limits of at least $1,000,000. The Crime & Fidelity coverage should name ADT as a loss payee. It is also acceptable for the Subcontractor or agent to issue a crime bond for $1,000,000, naming ADT as a Loss Payee.

6) If security guard or security patrol services are being performed, the Subcontractor must evidence insurance with the following <u>additional</u> coverage:

   a. If Guards are to be UN-ARMED:

     Professional Errors and Omissions Liability Insurance (Professional Security Services Liability) for Security Guards with limits of at least $1,000,000.

Copyright 2005 ADT Security Services, Inc. All rights reserved.

b. If Guards are to be ARMED:

i.    General Liability coverage must be increased to $3,000,000 per occurrence for Bodily Injury, Personal Injury, and Property Damage covering the armed operations of all security guard personnel. If the use of firearms is covered under a special insurance policy, ADT will be named as an Additional Insured on that policy as well as on the other polices mentioned in this exhibit.

ii.    Professional Errors and Omissions Liability Insurance (Professional Security Services Liability) for Security Guards with limits of at least $3,000,000.

iii.    All such insurance specified in C.3 and C.4 shall include an endorsement naming ADT as an Additional Insured and Certificate Holder.  In addition all insurance specified in C.1, C.2, C.3, and C.4 shall include a Waiver of Subrogation endorsement in favor of ADT.

**NOTE:  All such insurance specified in B.3, B.4, B.5, and B.6 shall include an endorsement naming ADT as an Additional Insured and Certificate Holder.  In addition all insurance specified in B.1, B.2, B.3, and B.4 shall be Primary and Non-Contributory to any insurance carried by ADT or ADT's Customer and shall include a Waiver of Subrogation endorsement in favor of ADT and ADT's Customer.**

**IN WITNESS WHEREOF**, this Exhibit has been accepted and agreed to by the parties hereto as evidenced by their signature below as of the Effective Date of the Agreement.

ADT SECURITY SERVICES, INC. ("ADT")    Arrow Security ("Subcontractor")

By: _Shannon Ackerman_    By: _____
    (Signature)        (Signature)

Name Printed: _Shannon Ackerman_    Name Printed: _Alexander J. Caro Jr._

Its: _Authorized Designee_    Its: _President_
  Vice President or Authorized Designee    Proprietor / Owner / Vice President

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

**EXHIBIT E**

**BACKGROUND CHECKS AND SUSTANCE TESTING POLICY**

NOTE: THIS EXHIBIT SHALL NOT APPLY TO SUBCONTRACTOR EMPLOYEES WHO ARE
      EMPLOYED SUBJECT TO A COLLECTIVE BARGAINING AGREEMENT OR IN STATES
      WHERE SUCH REQUIREMENTS ARE PROHIBITED BY LAW.

A. BACKGROUND CHECKS:

(1)  For each of Subcontractor's employees or agents ("Employee") who are to be dispatched to
     the work site or who will otherwise be performing work or services under the Agreement (the
     "Work"), Subcontractor shall obtain a criminal background check ("Background Check").

(2)  No Employee may perform Work until Subcontractor certifies in writing that the Employee has
     passed the Background Check. In particular, the certification must state that the Background
     Check covered the entire adult lifetime of the Employee and that the Background Check
     demonstrates that the Employee has never been convicted of or pled no contest or nolo
     contendre to any felony.  For purposes of this Agreement a "felony" is defined as any offense
     that is punishable under the laws of the state in which the Work is to be performed (the
     "State"), or that would be punishable if committed in the State, by death or imprisonment in a
     State penitentiary or correctional facility for a period of more than one year. As used herein a
     person is considered an "adult" after he or she has attained 18 years of age.  In addition, the
     certification must state that the Employee has not, during the previous ten years, been
     convicted of or pled no contest or nolo contendre to a misdemeanor involving a breach of
     trust, dishonesty or violence as set forth below. The term "misdemeanor" shall mean any
     criminal offense that is punishable under the laws of the State by a term of imprisonment in a
     county correctional facility not in excess of one year. The term "misdemeanor" shall not mean
     a conviction for any non-criminal traffic violation or violation of any municipal or county
     ordinance.  The term "convicted" includes guilty pleas that are later dismissed or withdrawn
     through deferred adjudication and restoration of rights, and other similar court actions.
     However, for the purposes of this Agreement, expungements shall not be considered to be
     convictions.  The misdemeanors shown below are subject to ADT's unilateral revision from
     time to time, but only to comply with the intent of the Agreement.

Misdemeanors Involving a Breach of Trust, Dishonesty or Violence shall include the following:

| | |
|---|---|
| - Assault | - Larceny |
| - Attempted Murder | - Obstruction of Justice |
| - Battery | - Obstruction of Official Business |
| - Breaking and Entering | - Passing Bad Checks |
| - Child Endangering | - Petty Theft |
| - Conspiracy | - Receiving Stolen Property |
| - Contributing to the Delinquency of a Minor | - Robbery |
| - Criminal Damaging | - Shoplifting |
| - Death by Vehicle | - Stalking |
| - Domestic Violence | - Terrorist Acts |
| - Drug Trafficking | - Theft |
| - Embezzlement | - Theft by Deception |
| - False Statement to Obtain Credit | - Threats/Menacing/Harassing |
| - Falsification | - Unlawful Restraint |
| - Grand Theft Auto | - Use of a Stolen Credit Card |
| - Identity Fraud | - Violation of Probation |
| - Improper Use of a Dangerous Weapon | - Voluntary Manslaughter |
| - Kidnapping | - Welfare Fraud |

Because states' statutes vary in name and description of a crime, the above list provides a
general description in most commonly known terms.  Crimes by different names but involving the
underlying offense shall also prevent an individual from performing Work under this Agreement.

Arrests should not be considered unless charges are currently pending that involve the above
listed offenses. If charges are pending which involve one or more of the above listed offenses, the
individual cannot perform Work under this Agreement until there is a final disposition of the
charge.  Such final disposition should be acted upon in accordance with the guidelines above.

(3)  ADT may perform random audits to insure that the certifications are accurate.

(4)  Subcontractor will pay the cost of each Background Check.

(5)  If ADT at any time bars an Employee from performing Work under this Agreement,
     Subcontractor will not thereafter attempt to have such Employee work on any other ADT
     project.

(6)  Subcontractor shall ensure that every Employee executes the Felony Questionnaire
     ("Questionnaire") attached hereto as Attachment F-1 on an annual basis commencing on the

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

Effective Date of the Agreement. ADT reserves the right to change the content of Attachment F-1 from time to time.

(7) The failure of Subcontractor to comply with the foregoing provisions constitutes cause for termination of the Agreement.

## B. SUBSTANCE TESTING:

Subcontractors that perform labor or services for ADT must have and administer a substance abuse and drug testing policy. Such policy must include substance testing of Subcontractor's employees performing Work on ADT projects. The failure of Subcontractor to comply with the following provisions constitutes cause for termination of the Agreement.

(8) The use, possession, concealment, transportation, promotion, or sale of the following substances is strictly prohibited on any ADT project. Any Subcontractor employee in violation of these provisions is prohibited from performing Work for ADT. Prohibited substances and materials ("Substance(s)") are defined as:

    (a) any alcoholic beverage;

    (b) any substance that the individual may not sell, use, or distribute under the laws of the state in which the Work is to be performed; and

    (c) any otherwise legal, but illicitly-used substances. Otherwise legal, but illicitly-used substances include prescription drugs obtained without proper medical authorization, and prescribed drugs, over-the-counter drugs, and other substances not being used for their intended purposes or at the intended dosage.

(9) Subcontractors shall submit a copy of their policies and program to ADT. Such policies must provide for Substance testing of employees and must meet the minimum standards as set forth below. ADT reserves the right to withhold solicitation of bids or to deny entry on any ADT project premises of any Subcontractor that fails to present a written policy that meets the minimum standards or fails to administer an acceptable policy. A violation of this policy will subject Subcontractor to denial of entry or privilege to work on any ADT project. Reinstatement may be sought and obtained at ADT's sole discretion. Such requests will be evaluated on the merits of each case and must be supported by evidence that the Subcontractor's employees have successfully passed a substance screen within thirty (30) days of the request for evaluation.

(10) Testing.

    **(a) Definitions.** For the purposes of this Agreement:

       (i) "Substance Testing" means the analysis of urine, saliva, or breath; however, at times circumstances may warrant additional testing methods.

       (ii) "Drug Test" means any chemical, biological, or physical instrumental analysis administered, by a laboratory certified by the United States Department of Health and Human Services or licensed by the Agency for Health Care Administration, for the purpose of determining the presence or absence of a drug or its metabolites.

       (iii) "Chain of Custody" means the combination of procedures and documentation that provides a faithful and accurate written record of the custody of a biological specimen from time of initial collection of a specimen to final laboratory analysis.

       (iv) "Negative Test Result" means a laboratory conclusion that the presence of a substance was not detected in a specimen at or above the screening and confirmation levels utilized.

       (v) "Screened Positive Result" means that an Enzyme Multiple Immunoassay Test ("EMIT") analysis has revealed one or more substances present at or above the screening cut-off level.

       (vi) "Presumptive Positive Result" means a laboratory conclusion that a specimen was found to contain the presence of a substance based upon one or more analytical procedures that included gas chromatography/mass spectrometry ("GM/MS").

       (vii) "Confirmed Positive Result" means a laboratory presumptive positive result that has been confirmed as a positive substance test by a Medical Review Officer.

       (viii) "Medical Review Officer" or "MRO" is defined as a licensed physician, employed with or contracted with an employer, who has knowledge of substance abuse disorders, laboratory testing procedures, and Chain of Custody collection procedures; who verifies positive, confirmed test results; and who has the necessary medical training to interpret and evaluate an employee's positive test result in relation to the employee's medical history or any other relevant biomedical information.

       (ix) "Reasonable-Suspicion" means drug testing based on a belief that an employee is using or has used drugs in violation of the employer's policy drawn from specific objective and articulable facts and reasonable inferences drawn from those facts in light of experience. Among other things, such facts and inferences may be based upon:

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

1. Observable phenomena while at work, such as direct observation of drug use or of the physical symptoms or manifestations of being under the influence of a drug.
2. Abnormal conduct or erratic behavior while at work or a significant deterioration in work performance.
3. A report of drug use, provided by a reliable and credible source. 4. Evidence that an individual has tampered with a drug test during his or her employment with the current employer.
4. Information that an employee has caused, contributed to, or been involved in an accident while at work.
5. Evidence that an employee has used, possessed, sold, solicited, or transferred drugs while working or while on the employer's premises or while operating the employer's vehicle, machinery, or equipment.

**(b) Laboratory and Sampling Standards.**  Testing for the following substances, at the indicated screening and confirmation cutoffs, is recommended:

| Drug | EMIT Screen | GC/MS Confirmation Levels |
|------|-------------|---------------------------|
| Amphetamines | 1000 ng/ml | 500 ng/ml |
| Marijuana / Cannabinoids | 50 ng/ml | 15 ng/ml |
| Barbiturates | 300ng/ml | 150ng/ml |
| Benzodiazepines | 300ng/ml | 150ng/ml |
| Cocaine | 300 ng/ml | 150 ng/ml |
| Opiates | 2000 ng/ml | 2000 ng/ml |
| Methadone | 300ng/ml | 150ng/ml |
| Phencyclidine / PCP | 25 ng/ml | 25 ng/ml |
| Propoxyphene / Darvon | 300ng/ml | 150ng/ml |
| Alcohol | .02 BAC | .02 BAC |

**NOTE:** Subcontractors subject to Department of Transportation testing shall abide by the levels set by the DOT regulations.

**(c) Confidentiality.** Results of Substance Testing shall not be individually disclosed to ADT; however, ADT will require that Subcontractor certify that each employee assigned to perform the Work has passed a Substance Test that meets the standards set forth above. Subcontractor must maintain records of such tests and such records are subject to audit by ADT.  The results of substance tests performed for Reasonable-Suspicion or accident/incident investigations (as described below) must be disclosed to ADT upon request.

**(d) Requirements.**  Each of Subcontractor's employees who are to be dispatched to the work site or who will otherwise be performing the Work must have been tested for the presence of the Substances listed above. No employee who tests positive shall be deployed to any ADT work site or shall be permitted to perform any of the Work under this Agreement. At a minimum, testing shall be performed as follows:

(i)   Pre-employment;
(ii)  Upon Reasonable-Suspicion (as defined above) by ADT that a Subcontractor's employee performing the Work has consumed or is in possession of any substance or item prohibited by this policy; and
(iii) When requested by ADT, immediately following any incident that results in a recordable bodily injury, as defined by OSHA, or damage to real or personal property not owned by the Subcontractor's employee. In addition, any substance testing, following an incident requiring DOT Substance Testing as regulated and described by DOT (FHA, RSPA, USCG) must be strictly followed. Substance Testing may also be required following a near-miss incident. A "near-miss incident" is any incident that, if it had proceeded to a reasonably possible and more serious level of development, would have had the potential for personal injuries, property damage, or serious liability claims.

**(e) Expense.**  Subcontractor shall assume all costs associated with testing.

**(f) Refusal to be tested.**  Any Subcontractor employee who refuses to sign a consent form or submit to testing will not longer be allowed to perform the Work.

(4) Compliance Audits. ADT reserves the right to audit a Subcontractor's records periodically to verify compliance with this policy.  Audit results will be treated as confidential to protect the privacy of tested persons.
(5) Subcontracts.  In all cases where Subcontractor is permitted to employ a sub-subcontractor, the Subcontractor is responsible for ensuring that the sub-subcontractor and sub-subcontractor's employees are in compliance with this policy. Contracts between Subcontractor and sub-subcontractors must stipulate that ADT reserves the right to audit sub-subcontractor's substance programs.

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

(6) Consent Forms.  The Subcontractor must obtain a signed consent from its employees who are engaged in the performance of the Work to release to ADT the results of any substance testing performed.

(7) Notice.   Subcontractor must ensure that each of its employees and sub-subcontractor employees are informed of the provisions of this policy and of the Subcontractor's substance abuse policy. Notice will include the consequences of failure to comply, and notice must be made prior to commencing any Work.

(8) Conclusion.  Consideration for performing work for ADT will be conditioned upon Subcontractor's implementation of a policy that, in ADT's sole judgment, conforms to the minimum standards expressed in this policy.  Program development and implementation are the responsibility of the Subcontractor.  The purpose of this policy is to provide a safe and efficient working environment for all persons engaged in the performance of the Work. Cooperation is vital to the achievement of this important goal.

**IN WITNESS WHEREOF,** this Exhibit has been accepted and agreed to by the parties hereto as evidenced by their signature below as of the Effective Date of the Agreement.

**ADT SECURITY SERVICES, INC. ("ADT")**       **Arrow Security ("Subcontractor")**



By: _____       By: _____
     (Signature)                              (Signature)

Name Printed: Shannon Ackerman       Name Printed: Alexander J Caro Jr.

Its: Authorized Designee             Its: President
     Vice President or Authorized Designee       Proprietor / Owner / Vice President



Copyright 2005 ADT Security Services, Inc.  All rights reserved.

## AMENDMENT TO THE MASTER AGREEMENT FOR SUBCONTRACTING SERVICES

**THIS AMENDMENT** (this "Amendment") dated June 1, 2011, and effective as of the last date signed, amends the Master Agreement for Subcontracting Services ("Agreement"). The Agreement as modified by this Amendment constitutes the "Agreement" by and between **ADT SECURITY SERVICES, INC.** ("ADT") and Arrow Security ("Subcontractor"). ADT and Subcontractor may each be referred to herein individually as a "party" or collectively as the "parties".

Notwithstanding anything in the Agreement to the contrary, Subcontractor and ADT agree as follows:

**1**. New language on Section D of Exhibit V: Guard responses Services (attached)
**2**. Three year term starting June 1, 2011 to expire on May 31, 2014

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment, which may be signed in one or more counterparts, which taken together shall constitute one and the same Amendment, as of the day and year first above written. The parties may scan, fax, email, image, or otherwise convert this Amendment into an electronic format of any type or form, now known or developed in the future. Any unaltered or unadulterated copy of this Amendment produced from such an electronic format will be legally binding upon the parties and equivalent to the original for all purposes.

SUBCONTRACTOR:

By: _____

Title: _PRESIDENT_____

ADT SECURITY SERVICES, INC.

By: _Shannon Arhuman_____

Title: _SpecOps Unit Mgr_____

## V: GUARD RESPONSE SERVICES:

| ☐ Service/Residential and Small Installation | ☐ Medium to Large Installation | ☐ Inspections | ☒ Guard or Patrol Response |
|---|---|---|---|

**THE FOLLOWING ADDITIONAL PROVISIONS APPLY TO GUARD AND/OR PATROL RESPONSE WORK.**

**A. SERVICES:** Subcontractor shall provide alarm response services and investigation, the Work, to alarms at ADT Customer's premises location as directed/dispatched by ADT.

    **(1) The Work:** Shall include, without limitation:

        (a) Responding, as dispatched by ADT, to an alarm signal from an ADT Customer's premises ("Premises") unarmed with properly trained and licensed personnel ("Guard") between the hours of: **\*\*subject to each district business need- see attachment of awarded DT information**

        Hours ⬚ PM to ⬚ AM – Monday through Friday

        Hours ⬚ PM to ⬚ AM – Saturdays, Sundays, Holidays*

        * Holidays mean U.S. Federal holidays observed by the United States Office of Personnel Management. For a current list, please visit http://www.opm.gov/fedhol/index.asp.

    (b) Conducting an Investigation of the Premises as follows:

        1. Exterior Investigation - A drive through of the parking facilities and any fenced site yard. An inspection of the building exterior and visual checks of doors and windows from his/her vehicle.  Guard will follow up by providing a physical check of all exterior doors and windows to determine if all are secure.

        2. Interior Investigation – If keys are provided, the Guard will enter the building and check for any signs of damages or forced entry. All interior doors will be checked to see if they are secure.

    (c) Guard will promptly notify the designated ADT representative of the results of the investigation.

    (d) ADT will notify Local Authorities if assistance is required.

**B. GENERAL AND REPORTING REQUIREMENTS:**

    (1) Upon being dispatched by ADT, the Guard shall respond to the Alarm by arriving at the Premises where the Alarm activated as soon as lawfully possible.

    (2) The Guard shall respond within two hours of dispatch unless otherwise specified under the UL requirements or local regulations. (*subject to negotiation based on instances of acts of God or other events such as wildfires or remote geography)

    (3) The Guard shall call in to ADT his/her arrival at the Premises.

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

(4) Upon arrival, the Guard shall, together with the local police officer who may also be dispatched to the Premises, attempt to identify the cause of the Alarm and promptly notify ADT of such cause or, if no cause can be determined, promptly notify ADT that the cause is unknown.

(5) The Guard shall fill out a report on a form provided by ADT (ADT Service Ticket Form 524) or other such form as designated by ADT setting forth the Customer name and address, date, time, service request code and cause code of the Alarm, arrival time, and activity relating to the investigation at each Customer premises.  The original of the report will be mailed to ADT and the other will be left at the ADT Customer's premises where ADT's Customer shall receive the report.

**C. KEYS:**

(1) Keys provided to the Subcontractor will be kept in envelopes in a secure location and labeled so as not to identify the premises they unlock.

(2) All premises keys, if provided to Subcontractor, will be inventoried daily and signed for by the Guard who takes possession and custody of them.

(3) Used keys will be resealed in new envelopes with the time and date noted on the envelope.

(4) Subcontractor will be responsible for the costs associated with the replacement of any lost keys (which may include re-keying, if requested by the Customer).

**D. APPAREL AND APPEARANCE:** In addition to the Apparel and Appearance requirements set forth in the Agreement, Subcontractor agrees as follows:

(1) Subcontractor and all Subcontractor employees providing the Work in response to an ADT alarm will be in a neat, clean uniform clearly identifying Subcontractor's Response Company.

(2) All Subcontractor employees shall carry a photo identification clearly identifying them as an employee of Subcontractor.

**E. COMPENSATION:**  The all-inclusive charges to ADT for the Work shall be as follows:

(1) Fixed charge totaling 80% of monthly average per district per month for performance of the Work, after which the subcontractor may charge a predetermined per run charge. *See pricing addendum.

(2) If invoicing as identified in Section V.E(3) above, includes the Work that has not been performed in accordance with Section V.A through D above, ADT, at its sole discretion, may withhold payment for each occurrence not meeting the criteria set therein.

(3) In the event that 20%-29.9% of the responses for any given month were responded to outside of the two hour response time (or stated UL/locally regulated time), ADT will invoke a penalty of 20% of the specific DT invoice for that given month.

(4) In the event that 30%-49.9% of the responses for any given month were responded to outside of the two hour response time (or stated UL/locally regulated time), ADT will invoke a penalty of 30% of the specific DT invoice for that given month

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

(5) In the event that 50% or above of the responses for any given month were responded to outside of the two hour response time (or stated UL/locally regulated time), ADT will invoke a penalty of 50% of the specific DT invoice for that given month. *If level of service sustains at less than 50% for 3 months- ADT has the right to renegotiate the contract.

**IN WITNESS WHEREOF**, this Exhibit has been accepted and agreed to by the parties hereto as evidenced by their signature below as of the Effective Date of the Agreement.

**ADT SECURITY SERVICES, INC. ("ADT")**

By: _Shannon Ackerman_

(Signature)

Name Printed: _Shannon Ackerman_

Its: _Authorized Designee_

Vice President or Authorized Designee

**Subcontractor**     **Company**     **Name**
**("Subcontractor")**

By: _____

(Signature)

Name Printed: _ALEXANDER   J. CARI_

Its: _PRESIDENT_

Proprietor / Owner / Vice President

Copyright 2005 ADT Security Services, Inc.  All rights reserved.

| District Number | District Name | Branches | Hours of Operation | Awarded | Direct/Sub | Per call | avg monthly calls | 80% of monthly | Monthly retainer paid |
|---|---|---|---|---|---|---|---|---|---|
| 118 | Long Island, NY | 52,190,700,752 | 24/7 | Arrow | Direct | $65.00 | 415 | 332 | $21,580.00 |

DT: this indicates the ADT District that service is required in

Branches: this indicated the ADT branches that service is required in

Hours of Operation: this indicated the hours needed for guard services

Direct/ Sub: this indicated whether your company will be providing the services directly or through a subcontractor

Per call: this indicates the cost per call that you will be paid for services

Avg monthly calls: indicates the historical average call volume per month

80% of monthly: indicates 80% of the avg monthly calls and is how your 1st monthly payment is based

Monthly retainer paid: inidcates your pay per run * the 80% of average calls- this amount will be paid around the first week of the month

Any valid calls run over this 80% number will be paid after the audit of that month

Example- if for Jan you run 20 calls over the already paid 80% number, you will be paid for this difference after Feb 15th

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

# EXHIBIT "B"

June 12, 2008


Arrow Security
ATTN: AJ Caro
60 Knickerbocker Ave.
Bohemia, NY 11716

Dear AJ:

We are contacting you today regarding the new billing system that will go into effect as of July 1, 2008. In the Long Island, NY area, where you currently provide guard service & will continue to provide service, for ADT Security Services, we will be using new pricing as of July 1, 2008. Sometime on or around July 1st, you will receive a payment from ADT Security Services, in the amount of $32,305.00 for the Long Island area, not including the Hamptons. This is the guaranteed 60% of the contract cost, based on the historical call volume. This payment will include 497 calls. Sometime on or around July 1st, you will receive a payment from ADT Security Services, in the amount of $14,600.00 for the Hamptons. This payment will include guard response services 24 hours a day & 7 days a week.

The additional 40% will be subject to auditing by a representative of ADT Security Inc. Please send in all invoices for the entire month by the 5th of the following month. (i.e. July invoices due by August 5th) These invoices will be audited. If all guidelines were met, an additional $65.00 per call, will be paid to your company for any calls over the initial 497 that you will have been paid for already for the Long Island area.

We wish to thank you for your contributions and efforts throughout our relationship. Please do not hesitate to call me with any questions.

Sincerely,



Shannon Ackerman
Regional Special Operations Manager
ADT Security Services Inc.
National Dispatch Center
585-359-5883



ADT Security Services, Inc.
265 Thruway Park Drive
West Henrietta, NY 14586

Tele: 585 359 5887
Fax: 585 359 5839

May 14, 2008

AJ Caro
Arrow Security
60 Knickerbocker Ave.
Bohemia, NY 11716

Dear Mr. Caro,

Please find enclosed a copy of the final executed contract. If you have any questions you may call me at 585-321-4826.

Sincerely,

Jamie Palmer
Contract Compliance Coordinator
Subcontractor Labor Group

## ADOPTION AGREEMENT
### (Form 5 · Subcontractors)

This **ADOPTION AGREEMENT** (the "Adoption Agreement") is made as of the Effective Date as defined below, by and between ADT LLC, a Delaware limited liability company with offices at 1501 Yamato Rd., Boca Raton, FL, 33431 ("Newco") and **Arrow Security**, a Subcontractor, with offices at **60 Knickerbocker Ave., Bohemia NY** ("Provider"). Hereinafter Provider and/or Newco may each be referred to individually as a "Party" or collectively as the "Parties". The Effective Date of this Agreement shall be the date first set forth above or such later date as Newco may advise Provider by written notice (the "Effective Date").

**WHEREAS**, on September 19, 2011, Tyco International Ltd., the parent of ADT Security Services, Inc. ("ADT") announced that its Board of Directors approved a plan to, among other things, separate ADT's North American residential and small business security business from Tyco into a separately traded public company (the "Tyco Transaction");

**WHEREAS**, as part of the restructuring to be undertaken in anticipation of the separation of the Residential Business, Tyco intends to cause ADT to transfer its Residential Business assets and employees to ADT LLC, a newly formed Delaware limited liability company that will conduct the Residential Business and operate under the ADT brand name (the "ADT Transaction");

**WHEREAS**, ADT and Provider entered into a Master Agreement for Subcontracting Services dated **5/13/2008** (including any amendments thereto, but excluding any statements of work, purchase orders and similar ordering documents issued pursuant thereto unless expressly set forth herein, the "Original Agreement") under which Provider agreed to furnish goods and/or services (the "Services") to ADT;

**WHEREAS**, Newco wishes to engage the Provider to perform the Services for Newco under the terms and conditions of the Original Agreement as modified by this Adoption Agreement;

**WHEREAS,** Provider agrees to provide the Services to Newco under the terms and conditions of the Original Agreement as modified by this Adoption Agreement;

**NOW, THEREFORE**, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Newco and Provider hereby agree as follows:

1.      The Agreement.  The Original Agreement as amended by this Adoption Agreement and shall govern the provision of Services by Provider to Newco.  Capitalized terms used but not otherwise defined herein, shall have the meanings set forth in the Original Agreement.  The Parties acknowledge that this Adoption Agreement constitutes a separate contract between Newco and Provider and that any modifications made to the Original Agreement by Newco and Provider apply only to Newco and Provider.  In the event of a conflict between the terms of the Original Agreement and this Adoption Agreement, the terms of this Adoption Agreement shall prevail.  The Effective Date of this Adoption Agreement is the date of the ADT Transaction, which is expected to occur on or about June 29, 2012.

2.      Responsibility.  Newco will be solely and individually liable to Provider for Newco's acts, omissions, duties, and obligations under this Adoption Agreement, including, but not limited to, any obligations of payment.  Likewise, Provider will be solely liable to Newco for Provider's acts, omissions, duties, and any obligations under this Adoption Agreement.  Newco will not be liable for, and Provider releases Newco from, ADT's acts or omissions, non-performance or performance including, but not limited to, any obligations of payment under the Original Agreement.  Provider agrees not to seek recourse against Newco for the breaches, acts or omissions of ADT under the Original Agreement, including, but not limited to, payment defaults of ADT. Likewise, ADT shall not be liable for Newco's acts or omissions, non-performance or performance including, but not limited, any payment obligations under this Adoption Agreement, and Provider agrees not to seek recourse against ADT for the breaches, acts, or omissions of Newco under this Adoption Agreement, including, but not limited to, any payment defaults by Newco under this Adoption Agreement.

1

3.      The following specific modifications to the Original Agreement have been agreed to by the Parties:

        a.      All references to "ADT" under the Original Agreement shall refer to Newco under this Adoption Agreement.

4.      **Electronic Media**. Either party may scan, fax, email, image, or otherwise convert this Adoption Agreement and any associated schedules, exhibits, documents, and amendments (individually, a "Document" and collectively, "Documents") into an "Electronic Format" of any type or form, now known or developed in the future. Any unaltered or unadulterated copy of such Document(s) produced from an Electronic Format will be legally binding upon the parties and equivalent to the original for all purposes, including litigation. Each party may rely upon the other party's assent to the terms and conditions of such Document(s), if such other party has signed such Document(s) or demonstrated its intent to be bound whether by electronic signature or otherwise.

5.      **Entire Agreement**. This Adoption Agreement and its attachment(s) set forth the entire agreement between the parties and supersedes any and all prior or contemporaneous agreements of the parties with respect to the subject matter contained herein.  No change, amendment, or modification of any provision of this Agreement shall be valid unless set forth in a written instrument signed by both parties.

6.      **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all such separate counterparts shall together constitute but the same agreement."

        **IN WITNESS WHEREOF**, the Parties have caused this Adoption Agreement to be executed by their duly authorized representatives with the intent to be legally bound as of the Effective Date.

**ADT LLC**                                          Provider: Arrow Security

By:_____                  By:_____

Name:_____                  Name: A.J. CARO

Title:_____                 Title: PRESIDENT

Date:_____                  Date: 6/6/12

**AGREED AND ACCEPTED:**

**ADT Security Services, Inc.**

By:_____

Name:_____

Title:_____

Date:_____

2

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

# EXHIBIT "C"

4:25 PM
09/05/18
Accrual Basis

# ARON SECURITY INC
## Received Payments for ADT SECURITY
### All Transactions

| Num | Date | Pay Meth | Amount | Unapplied Amount |
|---|---|---|---|---|
| ACH | 02/07/2018 | Check | 14,600.00 | |
| ACH | 01/09/2018 | Check | 14,600.00 | |
| 310250... | 12/12/2017 | E-Check | 14,600.00 | |
| CTX DE... | 11/08/2017 | Check | 14,600.00 | |
| 310236. | 10/03/2017 | E-Check | 14,600.00 | |
| 310232. | 09/08/2017 | E-Check | 14,600.00 | |
| 310228. | 08/15/2017 | E-Check | 14,600.00 | |
| ACH | 07/11/2017 | E-Check | 14,600.00 | |
| ACH 20... | 06/06/2017 | E-Check | 14,600.00 | |
| ACH | 05/09/2017 | E-Check | 14,600.00 | |
| ACH 20... | 04/20/2017 | Check | 14,600.00 | |
| | 03/07/2017 | EFT | 14,600.00 | |
| | 03/01/2017 | EFT | 14,600.00 | |
| | 01/04/2017 | E-Check | 14,600.00 | |
| | 12/08/2016 | EFT | 14,600.00 | |
| | 11/15/2016 | EFT | 14,600.00 | |
| | 10/05/2016 | EFT | 14,600.00 | |
| EFT310. | 09/02/2016 | E-Check | 14,600.00 | |
| | 08/15/2016 | Credit Card | 14,600.00 | |
| ACH 14... | 07/11/2016 | EFT | 14,600.00 | |
| EFT | 06/10/2016 | Check | 14,600.00 | |
| | 05/11/2016 | Check | 14,600.00 | |
| | 04/08/2016 | Check | 14,600.00 | |
| | 03/10/2016 | Check | 14,600.00 | |
| EFT | 02/08/2016 | TRANSFER | 14,600.00 | |
| EFT | 01/27/2016 | EFT | 14,600.00 | |
| EFT | 12/11/2015 | EFT | 14,600.00 | |
| EFT | 11/06/2015 | EFT | 14,600.00 | |
| EFT | 10/08/2015 | EFT | 14,600.00 | |
| | 09/16/2015 | Visa | 14,600.00 | |
| EFT 00... | 08/20/2015 | EFT | 14,600.00 | |
| EFT | 07/30/2015 | EFT | 14,600.00 | |
| EFT | 06/10/2015 | Visa | 14,600.00 | |
| | 05/12/2015 | E-Check | 14,600.00 | |
| 001039... | 04/02/2015 | EFT | 14,600.00 | |
| 001039... | 03/10/2015 | EFT | 14,600.00 | |
| 001039... | 02/12/2015 | EFT | 14,600.00 | |
| 010392. | 01/13/2015 | EFT | 14,600.00 | |
| | 12/10/2014 | EFT | 14,600.00 | |
| 111014 | 11/10/2014 | EFT | 14,600.00 | |
| 001039... | 10/07/2014 | EFT | 14,600.00 | |
| 001039... | 09/09/2014 | EFT | 14,600.00 | |
| 001039... | 08/12/2014 | EFT | 14,600.00 | |
| 001039... | 07/29/2014 | EFT | 14,600.00 | |
| | 06/11/2014 | EFT | 14,600.00 | |
| | 05/06/2014 | EFT | 14,600.00 | |
| 001039... | 04/10/2014 | EFT | 14,600.00 | |
| | 03/11/2014 | Check | 14,600.00 | |

4:25 PM
09/05/18
Accrual Basis

# ARON SECURITY INC
## Received Payments for ADT SECURITY
### All Transactions

| Num | Date | Pay Meth | Amount | Unapplied Amount |
|---|---|---|---|---|
| 001008... | 02/14/2014 | EFT | 21,580.00 | |
| 001039... | 02/12/2014 | EFT | 14,600.00 | |
| 001039... | 01/08/2014 | EFT | 14,600.00 | |
| 010086... | 12/12/2013 | EFT | 21,580.00 | |
| 002049... | 12/07/2013 | EFT | 14,600.00 | |
| 001039... | 11/08/2013 | EFT | 14,600.00 | |
| 001008... | 10/08/2013 | EFT | 21,580.00 | |
| 001039... | 10/08/2013 | EFT | 14,600.00 | |
| 001039... | 09/11/2013 | EFT | 14,600.00 | |
| 001008... | 09/10/2013 | EFT | 21,580.00 | |
| 001039... | 08/09/2013 | EFT | 21,580.00 | |
| 001008... | 08/03/2013 | EFT | 21,580.00 | |
| 001039... | 07/16/2013 | EFT | 14,600.00 | |
| 001008... | 07/12/2013 | EFT | 21,580.00 | |
| 1178521 | 06/20/2013 | Check | 17.73 | |
| 001008... | 06/13/2013 | EFT | 21,580.00 | |
| 001039... | 06/11/2013 | EFT | 14,600.00 | |
| 001039... | 05/10/2013 | EFT | 14,600.00 | |
| 001008... | 05/04/2013 | Check | 21,580.00 | |
| 001008... | 04/11/2013 | EFT | 270.00 | |
| 001039... | 04/09/2013 | EFT | 14,600.00 | |
| 001008... | 04/06/2013 | EFT | 21,580.00 | |
| 001008... | 03/12/2013 | EFT | 21,580.00 | |
| 001039... | 03/05/2013 | Check | 14,600.00 | |
| 001039... | 02/06/2013 | EFT | 14,600.00 | |
| 001008... | 02/05/2013 | EFT | 21,580.00 | |
| 010086... | 01/10/2013 | EFT | 21,580.00 | |
| 001039... | 01/09/2013 | EFT | 14,600.00 | |
| 001008... | 01/04/2013 | EFT | 21,580.00 | |
| 001039... | 12/10/2012 | EFT | 21,580.00 | |
| 001008... | 11/14/2012 | EFT | 21,580.00 | |
| 999938... | 11/06/2012 | ELECTRO... | 14,600.00 | |
| 001008... | 10/10/2012 | ELECTRO... | 21,580.00 | |
| 001039... | 10/09/2012 | EFT | 14,600.00 | |
| 001008... | 09/13/2012 | EFT | 21,580.00 | |
| 001039... | 09/12/2012 | EFT | 14,600.00 | |
| 001039... | 08/17/2012 | EFT | 14,600.00 | |
| 001008... | 08/08/2012 | EFT | 14,600.00 | |
| 001039... | 07/13/2012 | EFT | 21,580.00 | |
| 001008... | 07/13/2012 | EFT | 21,580.00 | |
| 001008... | 07/07/2012 | EFT | 866.78 | |
| 001008... | 06/13/2012 | EFT | 36,180.00 | |
| 001008... | 05/09/2012 | EFT | 36,180.00 | |
| 001008... | 04/27/2012 | EFT | 3,120.00 | |
| 001008... | 04/12/2012 | E-Check | 36,180.00 | |
| 001008... | 03/24/2012 | Check | 3,120.00 | |
| 001008... | 03/08/2012 | EFT | 36,180.00 | |
| 001008... | 02/07/2012 | EFT | 36,180.00 | |
| 001008... | 01/06/2012 | EFT | 36,180.00 | |

4:25 PM
09/05/18
Accrual Basis

# ARON SECURITY INC
## Received Payments for ADT SECURITY
### All Transactions

Page 3

| Num | Date | Pay Meth | Amount | Unapplied Amount |
|---|---|---|---|---|
| 001008... | 12/08/2011 | EFT | 36,180.00 | |
| 001008... | 12/02/2011 | EFT | 3,682.50 | |
| 001008... | 11/10/2011 | EFT | 36,180.00 | |
| 001008... | 10/29/2011 | EFT | 5,372.50 | |
| 001008... | 10/13/2011 | EFT | 36,180.00 | |
| 001008... | 10/01/2011 | EFT | 13,175.00 | |
| 001008... | 09/09/2011 | EFT | 48,029.57 | |
| 001008... | 08/24/2011 | EFT | 5,717.50 | |
| 001008... | 08/12/2011 | EFT | 69,733.00 | |
| 001008... | 07/27/2011 | EFT | 1,394.56 | |
| 001008... | 07/16/2011 | EFT | 68,338.34 | |
| 001008... | 06/11/2011 | EFT | 80,458.00 | |
| 001008... | 05/26/2011 | EFT | 315.00 | |
| 001008... | 05/04/2011 | EFT | 80,458.00 | |
| 001008... | 04/08/2011 | Check | -0.02 | 0.00 |
| 001008... | 04/06/2011 | EFT | 80,458.00 | |
| 001008... | 03/26/2011 | EFT | 2,658.00 | |
| 001008... | 03/10/2011 | EFT | 80,458.00 | |
| 001008... | 02/22/2011 | EFT | 18,691.60 | |
| 001008... | 02/12/2011 | ELECTRO... | 64,366.40 | |
| 001008... | 01/28/2011 | ELECTRO... | 300.00 | |
| 001008... | 01/05/2011 | EFT | 80,458.00 | |
| 001008... | 12/21/2010 | EFT | 240.00 | |
| 001008... | 12/13/2010 | EFT | 80,458.00 | |
| 001008... | 11/05/2010 | Check | 80,458.00 | |
| 001008... | 10/07/2010 | EFT | 80,458.00 | |
| 001008... | 09/13/2010 | EFT | 80,458.00 | |
| 001008... | 08/19/2010 | EFT | 650.00 | |
| 001008... | 08/05/2010 | EFT | 80,458.00 | |
| 001008... | 07/23/2010 | EFT | 272.00 | |
| 001008... | 07/09/2010 | EFT | 80,458.00 | |
| 001008... | 06/18/2010 | EFT | 759.50 | |
| 001008... | 06/10/2010 | ELECTRO... | 80,458.00 | |
| 001008... | 05/25/2010 | EFT | 272.00 | |
| 001008... | 05/07/2010 | EFT | 80,458.00 | |
| 001008... | 04/29/2010 | EFT | 260.00 | |
| 001008... | 04/09/2010 | EFT | 80,458.00 | |
| 001008... | 03/31/2010 | EFT | 256.00 | |
| 001008... | 03/10/2010 | EFT | 80,458.00 | |
| 001008... | 03/08/2010 | EFT | 506.00 | |
| 001008... | 02/04/2010 | EFT | 2,964.50 | |
| 001008... | 02/03/2010 | EFT | 80,458.00 | |
| 001008... | 01/07/2010 | EFT | 80,458.00 | |
| 001008... | 12/23/2009 | EFT | 120.00 | |
| 001008... | 12/10/2009 | EFT | 80,458.00 | |
| 001008... | 11/17/2009 | Check | 3,480.00 | |
| 001008... | 11/04/2009 | EFT | 80,458.00 | |
| 001008... | 10/23/2009 | EFT | 3,321.00 | |
| 001008... | 10/09/2009 | EFT | 80,458.00 | |

**4:25 PM**
**09/05/18**
**Accrual Basis**

# ARON SECURITY INC
## Received Payments for ADT SECURITY
### All Transactions

Page 4

| Num | Date | Pay Meth | Amount | Unapplied Amount |
|---|---|---|---|---|
| EFT | 09/21/2009 | Check | 732.00 | |
| 001008... | 09/14/2009 | EFT | 80,458.00 | |
| 001008... | 08/20/2009 | EFT | 1,877.00 | |
| 001008... | 08/06/2009 | EFT | 80,458.00 | |
| 001008... | 07/20/2009 | EFT | 2,255.00 | |
| 001008... | 07/07/2009 | EFT | 80,458.00 | |
| 001008... | 06/18/2009 | EFT | 3,049.00 | |
| 001008... | 06/11/2009 | EFT | 80,458.00 | |
| 001008... | 05/20/2009 | EFT | 4,591.00 | |
| 001008... | 05/13/2009 | EFT | 3,345.00 | |
| 001008... | 05/08/2009 | EFT | 120.00 | |
| 001008... | 05/06/2009 | ELECTRO... | 80,458.00 | |
| 001008... | 04/22/2009 | EFT | 895.00 | |
| 001008... | 04/16/2009 | EFT | 80,458.00 | |
| 001008... | 03/20/2009 | EFT | 5,448.00 | |
| 001008... | 03/13/2009 | ELECTRO... | 80,668.00 | |
| 001008... | 02/13/2009 | EFT | 11,558.00 | |
| 001008... | 02/06/2009 | EFT | 120,735.00 | |
| | 01/23/2009 | EFT | 17,534.00 | |
| EFT | 01/09/2009 | Check | 80,458.00 | |
| EFT | 12/30/2008 | Check | 5,037.25 | |
| | 12/12/2008 | EFT | 81,289.25 | |
| 001008... | 11/14/2008 | EFT | 8,235.00 | |
| 001008... | 11/07/2008 | EFT | 80,458.00 | |
| | 10/17/2008 | EFT | 2,570.00 | |
| | 10/10/2008 | EFT | 80,458.00 | |
| | 09/29/2008 | EFT | 8,190.00 | |
| 001008... | 09/05/2008 | EFT | 80,458.00 | |
| | 08/22/2008 | Check | 1,170.00 | |
| | 08/08/2008 | Check | -0.04 | 0.00 |
| 001008... | 08/01/2008 | EFT | 76,310.00 | |
| EFT | 07/07/2008 | Check | 46,905.00 | |
| 001008... | 06/13/2008 | ELECTRO... | 71,124.99 | |
| | 05/23/2008 | EFT | 73,124.99 | |
| | 05/09/2008 | EFT | 71,124.99 | |
| | 03/21/2008 | EFT | 71,124.99 | |
| | 02/29/2008 | EFT | 71,124.99 | |
| | 01/12/2008 | EFT | 71,124.99 | |
| 001008... | 12/07/2007 | EFT | 71,124.99 | |
| | 11/10/2007 | EFT | 65,124.99 | |
| | 10/05/2007 | EFT | 77,124.99 | |
| EFT | 09/14/2007 | Check | 71,124.99 | |
| | 08/17/2007 | EFT | 71,352.99 | |
| EFT 08/... | 08/03/2007 | EFT | 71,124.99 | |
| EFT 06/... | 06/22/2007 | EFT | 71,124.99 | |
| EFT 06/... | 06/08/2007 | EFT | 71,124.99 | |
| EFT 05/... | 05/04/2007 | EFT | 71,124.99 | |
| EFT 03/... | 03/16/2007 | EFT | 71,124.99 | |

Page 5

4:25 PM
09/05/18
Accrual Basis

**ARON SECURITY INC**
**Received Payments for ADT SECURITY**
All Transactions

| Num | Date | Pay Meth | Amount | Unapplied Amount |
|---|---|---|---|---|
| | 03/02/2007 | Check | 71,124.99 | |
| EFT 01/... | 01/19/2007 | EFT | 71,124.99 | |
| **Total** | | | **6,207,860.74** | **0.00** |

Aron Security Inc. d/b/a Arrow Security v. ADT LLC
Case No.:
Complaint and Demand for Jury Trial

# COMPOSITE
# EXHIBIT "D"



**ARROW SECURITY**
GET ARROW - GET SECURE

300 W MAIN ST.
SMITHTOWN, NY 11787
PH: 800-924-0138
F: 888-228-6115

| | |
|---|---|
| **Invoice Date:** | March 01, 2018 |
| **Invoice No:** | 100190738 |
| **Customer** | P-ADT |

Bill To:   ADT - NATIONAL DISPATCH CENTER

ATTN  DIANE BEACHEL                             **Location**          ADT - EAST HAMPTON
265 THRUWAY PARK DRIVE
WEST HENRIETTA NY 14586

Bill To:

| Invoice Date | Invoice Period | Services | PO No. | Term |
|---|---|---|---|---|
| 03/01/2018 | 03/01/2018-03/31/2018 | ALARM RESPONSE | VEND. #15494 | NET 30 DAYS |

| Date of Service | Tour/Security Officer | Hours | | | Rates | Total |
|---|---|---|---|---|---|---|
| | | Regular | O.T. | Holiday | | |
| | P-ADT - ADT - EAST HAMPTON  - ALARM RESPONSE - EAST HAMPTON | 224.50 | 0.00 | 0.00 | $65.03 | $14,600.00 |
| | Grand Total --> | 224.50 | 0.00 | 0.00 | | |

**Notes:**      dcbeachel@adt.com

| | |
|---|---|
| **Sub Total** | $14,600.00 |
| **Total Due** | $14,600.00 |

This bill is due and payable upon receipt and becomes delinquent 21 days after invoice date. If payment for service on this bill or a previous has not been made before becoming delinquent, such service is subject to a late payment charge of 1.5% per month, and may be discontinued. In the event of discontinuance, restoration may not be made until the applicable charges have been paid.



**ARROW SECURITY**
GET ARROW - GET SECURE

300 W MAIN ST.
SMITHTOWN, NY 11787
PH: 800-924-0138
F: 888-228-6115

| | |
|---|---|
| Invoice Date: | April 01, 2018 |
| Invoice No: | 100191615 |
| Customer | P-ADT |

Bill To:   ADT - NATIONAL DISPATCH CENTER

ATTN  DIANE BEACHEL
265 THRUWAY PARK DRIVE
WEST HENRIETTA NY 14586

Location     ADT - EAST HAMPTON

Bill To:

| Invoice Date | Invoice Period | Services | PO No. | Term |
|---|---|---|---|---|
| 04/01/2018 | 04/01/2018-04/30/2018 | ALARM RESPONSE | VEND. #15494 | NET 30 DAYS |

| Date of Service | Tour/Security Officer | Regular | O.T. | Holiday | Rates | Total |
|---|---|---|---|---|---|---|
| | | | Hours | | | |
| | P-ADT - ADT - EAST HAMPTON  - ALARM RESPONSE - EAST HAMPTON | 224.50 | 0.00 | 0.00 | $65.03 | $14,600.00 |
| | Grand Total --> | 224.50 | 0.00 | 0.00 | | |

Notes:      dcbeachel@adt.com

| | |
|---|---|
| Sub Total | $14,600.00 |
| Total Due | $14,600.00 |

This bill is due and payable upon receipt and becomes delinquent 21 days after invoice date. If payment for service on this bill or a previous has not been made before becoming delinquent, such service is subject to a late payment charge of 1.5% per month, and may be discontinued. In the event of discontinuance, restoration may not be made until the applicable charges have been paid.



**ARROW SECURITY**
GET ARROW - GET SECURE

300 W MAIN ST.
SMITHTOWN, NY 11787
PH: 800-924-0138
F: 888-228-6115

| | |
|---|---|
| **Invoice Date:** | May 01, 2018 |
| **Invoice No:** | 100192228 |
| **Customer** | P-ADT |

**Bill To:**   ADT - NATIONAL DISPATCH CENTER

ATTN  DIANE BEACHEL        **Location**    ADT - EAST HAMPTON
265 THRUWAY PARK DRIVE
WEST HENRIETTA NY 14586

**Bill To:**

| Invoice Date | Invoice Period | Services | | | PO No. | Term |
|---|---|---|---|---|---|---|
| 05/01/2018 | 05/01/2018-05/31/2018 | ALARM RESPONSE | | | VEND. #15494 | NET 30 DAYS |

| Date of Service | Tour/Security Officer | Regular | Hours O.T. | Holiday | Rates | Total |
|---|---|---|---|---|---|---|
| | P-ADT - ADT - EAST HAMPTON  - ALARM RESPONSE - EAST HAMPTON | 224.50 | 0.00 | 0.00 | $65.03 | $14,600.00 |
| | Grand Total --> | 224.50 | 0.00 | 0.00 | | |

**Notes:**    dcbeachel@adt.com

| | |
|---|---|
| **Sub Total** | $14,600.00 |
| **Total Due** | $14,600.00 |

This bill is due and payable upon receipt and becomes delinquent 21 days after invoice date. If payment for service on this bill or a previous has not been made before becoming delinquent, such service is subject to a late payment charge of 1.5% per month, and may be discontinued. In the event of discontinuance, restoration may not be made until the applicable charges have been paid.



**ARROW SECURITY**
GET ARROW - GET SECURE

300 W MAIN ST.
SMITHTOWN, NY 11787
PH: 800-924-0138
F: 888-228-6115

| | |
|---|---|
| **Invoice Date:** | June 01, 2018 |
| **Invoice No:** | 100192944 |
| **Customer** | P-ADT |

**Bill To:**   ADT - NATIONAL DISPATCH CENTER

ATTN  DIANE BEACHEL          **Location**          ADT - EAST HAMPTON
265 THRUWAY PARK DRIVE
WEST HENRIETTA NY 14586

**Bill To:**

| Invoice Date | Invoice Period | Services | PO No. | Term |
|---|---|---|---|---|
| 06/01/2018 | 06/01/2018-06/30/2018 | ALARM RESPONSE | VEND. #15494 | NET 30 DAYS |

| Date of Service | Tour/Security Officer | Hours | | | Rates | Total |
|---|---|---|---|---|---|---|
| | | Regular | O.T. | Holiday | | |
| | P-ADT - ADT - EAST HAMPTON  - ALARM RESPONSE - EAST HAMPTON | 224.50 | 0.00 | 0.00 | $65.03 | $14,600.00 |
| | Grand Total --> | 224.50 | 0.00 | 0.00 | | |

| | |
|---|---|
| **Sub Total** | $14,600.00 |
| **Total Due** | $14,600.00 |

**Notes:**          dcbeachel@adt.com

This bill is due and payable upon receipt and becomes delinquent 21 days after invoice date. If payment for service on this bill or a previous has not been made before becoming delinquent, such service is subject to a late payment charge of 1.5% per month, and may be discontinued. In the event of discontinuance, restoration may not be made until the applicable charges have been paid.



**ARROW SECURITY**
GET ARROW - GET SECURE

300 W MAIN ST.
SMITHTOWN, NY 11787
PH: 800-924-0138
F: 888-228-6115

| | |
|---|---|
| **Invoice Date:** | July 01, 2018 |
| **Invoice No:** | 100193549 |
| **Customer** | P-ADT |

Bill To:     ADT - NATIONAL DISPATCH CENTER

ATTN  DIANE MARCELLUS                               **Location**          ADT - EAST HAMPTON
265 THRUWAY PARK DRIVE
WEST HENRIETTA NY 14586

Bill To:

| Invoice Date | Invoice Period | Services | PO No. | Term |
|---|---|---|---|---|
| 07/01/2018 | 07/01/2018-07/31/2018 | ALARM RESPONSE | VEND. #15494 | NET 30 DAYS |

| Date of Service | Tour/Security Officer | Regular | O.T. | Holiday | Rates | Total |
|---|---|---|---|---|---|---|
| | **P-ADT - ADT - EAST HAMPTON  - ALARM RESPONSE - EAST HAMPTON** | **224.50** | **0.00** | **0.00** | $65.03 | **$14,600.00** |
| | Grand Total --> | 224.50 | 0.00 | 0.00 | | |

| | |
|---|---|
| **Sub Total** | **$14,600.00** |
| **Total Due** | **$14,600.00** |

Notes:          dcbeachel@adt.com

This bill is due and payable upon receipt and becomes delinquent 21 days after invoice date. If payment for service on this bill or a previous has not been made before becoming delinquent, such service is subject to a late payment charge of 1.5% per month, and may be discontinued. In the event of discontinuance, restoration may not be made until the applicable charges have been paid.



**ARROW SECURITY**
GET ARROW - GET SECURE

300 W MAIN ST.
SMITHTOWN, NY 11787
PH: 800-924-0138
F: 888-228-6115

| | |
|---|---|
| **Invoice Date:** | August 01, 2018 |
| **Invoice No:** | 100194290 |
| **Customer** | P-ADT |

Bill To:     ADT - NATIONAL DISPATCH CENTER

ATTN  DIANE MARCELLUS          **Location**        ADT - EAST HAMPTON
265 THRUWAY PARK DRIVE
WEST HENRIETTA NY 14586

Bill To:

| Invoice Date | Invoice Period | Services | PO No. | Term |
|---|---|---|---|---|
| 08/01/2018 | 08/01/2018-08/31/2018 | ALARM RESPONSE | VEND. #15494 | NET 30 DAYS |

| Date of Service | Tour/Security Officer | Hours | | | Rates | Total |
|---|---|---|---|---|---|---|
| | | Regular | O.T. | Holiday | | |
| | P-ADT - ADT - EAST HAMPTON  -  ALARM RESPONSE - EAST HAMPTON | 224.50 | 0.00 | 0.00 | $65.03 | $14,600.00 |
| | Grand Total --> | 224.50 | 0.00 | 0.00 | | |

| | |
|---|---|
| **Sub Total** | $14,600.00 |
| **Total Due** | $14,600.00 |

Notes:        dcbeachel@adt.com

This bill is due and payable upon receipt and becomes delinquent 21 days after invoice date. If payment for service on this bill or a previous has not been made before becoming delinquent, such service is subject to a late payment charge of 1.5% per month, and may be discontinued. In the event of discontinuance, restoration may not be made until the applicable charges have been paid.



**ARROW SECURITY**
GET ARROW - GET SECURE

300 W MAIN ST.
SMITHTOWN, NY 11787
PH: 800-924-0138
F: 888-228-6115

| | |
|---|---|
| **Invoice Date:** | September 01, 2018 |
| **Invoice No:** | 100195184 |
| **Customer** | P-ADT |

**Bill To:**   ADT - NATIONAL DISPATCH CENTER

ATTN  DIANE MARCELLUS            **Location**      ADT - EAST HAMPTON
265 THRUWAY PARK DRIVE
WEST HENRIETTA NY 14586

**Bill To:**

| Invoice Date | Invoice Period | Services | | | PO No. | Term |
|---|---|---|---|---|---|---|
| 09/01/2018 | 09/01/2018-09/30/2018 | ALARM RESPONSE | | | VEND. #15494 | NET 30 DAYS |

| Date of Service | Tour/Security Officer | Hours | | | Rates | Total |
|---|---|---|---|---|---|---|
| | | Regular | O.T. | Holiday | | |
| | P-ADT - ADT - EAST HAMPTON  - ALARM RESPONSE - EAST HAMPTON | 224.50 | 0.00 | 0.00 | $65.03 | $14,600.00 |
| | Grand Total --> | 224.50 | 0.00 | 0.00 | | |

| | |
|---|---|
| **Sub Total** | $14,600.00 |
| **Total Due** | $14,600.00 |

**Notes:**      dcbeachel@adt.com

This bill is due and payable upon receipt and becomes delinquent 21 days after invoice date. If payment for service on this bill or a previous has not been made before becoming delinquent, such service is subject to a late payment charge of 1.5% per month, and may be discontinued. In the event of discontinuance, restoration may not be made until the applicable charges have been paid.



**ARROW SECURITY**
GET ARROW - GET SECURE

300 W MAIN ST.
SMITHTOWN, NY 11787
PH: 800-924-0138
F: 888-228-6115

| | |
|---|---|
| **Invoice Date:** | October 01, 2018 |
| **Invoice No:** | 100195922 |
| **Customer** | P-ADT |

**Bill To:**      ADT - NATIONAL DISPATCH CENTER

ATTN  DIANE MARCELLUS               **Location**      ADT - EAST HAMPTON
265 THRUWAY PARK DRIVE
WEST HENRIETTA NY 14586

**Bill To:**

| Invoice Date | Invoice Period | Services | PO No. | Term |
|---|---|---|---|---|
| 10/01/2018 | 10/01/2018-10/31/2018 | ALARM RESPONSE | VEND. #15494 | NET 30 DAYS |

| Date of Service | Tour/Security Officer | Hours | | | Rates | Total |
|---|---|---|---|---|---|---|
| | | Regular | O.T. | Holiday | | |
| | P-ADT - ADT - EAST HAMPTON  -  ALARM RESPONSE - EAST HAMPTON | 224.50 | 0.00 | 0.00 | $65.03 | $14,600.00 |
| | Grand Total --> | 224.50 | 0.00 | 0.00 | | |

**Notes:**      dcbeachel@adt.com

| | |
|---|---|
| **Sub Total** | $14,600.00 |
| **Total Due** | $14,600.00 |

This bill is due and payable upon receipt and becomes delinquent 21 days after invoice date. If payment for service on this bill or a previous has not been made before becoming delinquent, such service is subject to a late payment charge of 1.5% per month, and may be discontinued. In the event of discontinuance, restoration may not be made until the applicable charges have been paid.