UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

No. 9:19-cv-80420-Dimitrouleas

ARON SECURITY INC. d/b/a ARROW SECURITY,

    Plaintiff,

    v.

ADT LLC,

    Defendant.

_____/

## ANSWER AND COUNTERCLAIM

Defendant ADT LLC, for its answer to the complaint, denies all allegations of the complaint not expressly admitted below, and states as follows:

### ANSWER TO GENERAL ALLEGATIONS

1.     Admitted.

2.     Admitted.

3.     ADT admits that the complaint alleges claims for ADT's alleged breach of the parties' contract, but denies the substance of those claims.

4.     Admitted.

5.     ADT admits that it is a limited liability company.  Further, ADT states that it is wholly owned by The ADT Security Corporation, a corporation organized under the laws of the state of Delaware with principal offices in Boca Raton, Florida.

6.     Admitted.

7.     Admitted.

8. ADT admits that it and Arrow entered into a Master Agreement in May 2008, [DE 1 at 8] as amended by the parties in June 2011, [DE 1 at 42] and as adopted by ADT in June 2012, [DE 1 at 50] and refers the Court to the agreement as amended for its terms.

9. ADT admits the existence and validity of the Adoption Agreement, but denies the paragraph's remaining allegations.  Specifically, ADT states that the Adoption Agreement included in composite "Exhibit B" was formed in 2012, not 2008, upon the 2012 creation of ADT as a freestanding public company, as stated on the face of the Adoption Agreement itself [DE 1 at 50-51] and as explained more fully in the Counterclaim pled *infra*; that the other documents attached as Exhibit B are 2008 letters that are unrelated to the 2012 Adoption Agreement, again as evident from the face of those documents [DE 1 at 48-49]; and that this Paragraph therefore misstates both the identity and the contents of the documents contained in composite Exhibit B.

10. ADT admits that Arrow provided services to ADT under the parties' contract as amended, at all times pursuant to the terms of that contract, including its payment term.  ADT otherwise denies the paragraph's allegations.

11. ADT admits that Arrow provided services to ADT under the parties' contract as amended, at all times pursuant to the terms of that contract, including its payment term.  ADT otherwise denies the paragraph's allegations. Specifically, ADT denies that the contract provided that Arrow be compensated at "reasonable prices."

12. ADT admits that Arrow provided services to ADT under the parties' contract as amended, at all times pursuant to the terms of that contract, including its payment term.  ADT otherwise denies the paragraph's allegations.  ADT further states that the parties' respective rights and obligations are governed by the contract, which by its terms could not be varied except

by a writing, and that the parties' so-called "merchant relationship" is irrelevant to those rights and obligations under the contract.

13. Admitted.

14. Admitted. Further, ADT states that the contract as amended, including its payment term, continued in force until October 31, 2018, when ADT served Arrow with a formal notice of termination of the contract for cause, as ADT states more completely in its Counterclaim *infra*, and that Arrow's rights are in all respects relevant to this action governed by the contract as amended.

15. ADT admits that Arrow rendered these invoices, but denies that the invoiced sums correctly state the amounts owed to Arrow.

## ANSWER TO COUNT I
## BREACH OF CONTRACT

16. ADT restates its answers to Paragraphs 1 through 14 [*sic*] as if fully set forth here.

17. The paragraph states a legal conclusion to which no response is required.

18. ADT admits that a valid contract exists between the parties that governs this action, *see* DE 1 at 8-46, and refers the Court to the contract as amended for its contents.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. The paragraph states a legal conclusion to which no response is required.

24. The paragraph states a demand to which no response is required.

WHEREFORE, ADT asks the Court to enter judgment in its favor, dismiss Arrow's contract claim with prejudice, award ADT its costs and attorney fees incurred in the defense of

this cause, and award ADT such other and further relief as the Court may deem appropriate in the circumstances.

ANSWER TO COUNT II<br>UNJUST ENRICHMENT

25. ADT restates its answers to Paragraphs 1 through 14 [*sic*] as if fully set forth here.

26. The paragraph states a legal conclusion to which no response is required.

27. Denied.

28. Denied.

29. Admitted.

30. Denied. Further, "unjust enrichment" is irrelevant as a matter of Florida law in the presence of an express contract that governs the subject matter of the parties' dispute. The parties' contract as amended governs Arrow's claimed right to payment for the services Arrow rendered under it, and thus provides the exclusive remedy for Arrow's claims in this lawsuit.

31. Denied. Further, "unjust enrichment" is irrelevant as a matter of Florida law in the presence of an express contract that governs the subject matter of the parties' dispute. The parties' contract as amended governs Arrow's claimed right to payment for the services Arrow rendered under it, and thus provides the exclusive remedy for Arrow's claims in this lawsuit.

32. The paragraph states a legal conclusion to which no response is required.

33. The paragraph states a demand to which no response is required.

WHEREFORE, ADT asks the Court to enter judgment in its favor, dismiss Arrow's unjust enrichment claim with prejudice, award ADT its costs and attorney fees incurred in the defense of this cause, and award ADT such other and further relief as the Court may deem appropriate in the circumstances.

## AFFIRMATIVE DEFENSES

As provided by Rule 8(c) of the Federal Rules of Civil Procedure, ADT states the following affirmative defenses to Arrow's claims:

### Failure To State A Claim

For the reasons stated in ADT's pending motion [DE 6] to dismiss Count II of Arrow's complaint, the Court must dismiss Arrow's unjust enrichment claim as a matter of law because it fails to state a claim for which relief may be granted in the presence of an express written contract between the parties that governs the parties' respective rights and obligations.

### Estoppel; Waiver

In late 2017 and early 2018, ADT challenged Arrow's billing practices as unsupported by the parties' contract as amended on June 1, 2011, [DE 1 at 42] and as adopted by ADT on June 29, 2012. [DE 1 at 50.] ADT stopped further payments on the contract in light of Arrow's overcharges, which on information and belief exceed one million dollars. Arrow continued to provide services under the contract with knowledge of ADT's reasons for stopping payments. Arrow's decision to continue to perform under the contract with knowledge of the dispute, and without taking steps to resolve it, acts as a waiver and estoppel of any right to seek relief for ADT's refusal to pay for any services Arrow rendered under the contract after March 2018.

### Fraud

The parties' 2011 amendment of the contract [DE 1 at 42] renegotiated the payment term of the contract. Arrow, however, ignored the renegotiated term and intentionally overstated in its subsequent invoices to ADT the sums owed to Arrow under the renegotiated contract. These inflated invoices misstated facts material to Arrow's payment under the contract. Arrow intended to induce ADT to rely on these misstatements. In fact, ADT did rely on them, and continued to

pay Arrow the invoiced sums even though they were not supported by the payment term of the contract as amended.  ADT was damaged by Arrow's fraud by overpaying Arrow amounts believed to be in excess of one million dollars from 2012 through 2018.  Arrow's fraud relieves ADT of any obligation to provide Arrow the relief it seeks in this action.

### Statute Of Frauds

Arrow's apparent reliance on the parties' prior "merchant relationship" [DE 1 at 3] to justify its overbilling of ADT under the contract, fraudulently induced by Arrow as stated *supra*, violates the statute of frauds as well as the integration clauses agreed to in the parties' contract.

### Failure to Mitigate Damages

ADT placed Arrow on notice throughout late 2017 and early 2018 of its concerns that Arrow was in breach of the contract, and asked Arrow throughout the period for an explanation of the basis for its billing practices and other apparent breaches of the contract's requirements. ADT placed Arrow on formal written notice of these concerns with its March 30 letter to Arrow. Throughout, Arrow refused to address these breaches, or to work with ADT to resolve them. Instead, Arrow continued to perform under the contract and continued to submit inflated bills for its services without any contractual foundation for the amounts billed.  Arrow failed to mitigate its losses, if any, by continuing to perform under the contract without first addressing or resolving these concerns with ADT.

### First Breach

Under Florida law, a party that commits a substantial breach of a contract may not maintain an action against the other contracting party for a subsequent failure to perform.  *See, e.g., Inspiration Yacht Charters, Inc. v. Inspiration Yacht Charters, II, Inc.*, No. 09-cv-20472, 2010 WL 5014371, *11, *13 (S.D. Fla. Dec. 2, 2010), *aff'd*, 488 Fed. Appx. 408 (11th Cir.

2012); *accord Nature's Prod., Inc. v. Natrol, Inc.*, No. 11-cv-62409, 2013 WL 12061811, *2 (S.D. Fla. Jan. 30, 2013) (Dimitrouleas, J.); *Hyman v. Cohen*, 73 So. 2d 393, 397 (Fla. 1954). Arrow's overbilling of ADT breached the parties' contract, and in particular the renegotiated payment terms stated in the 2011 amendment to the contract. Arrow's other departures from the contract, as stated more fully in the accompanying Counterclaim *infra*, also constitute substantial breaches by Arrow of the contract. Arrow's first breaches of the contract as amended bar Arrow from maintaining this action for damages.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

No. 9:19-cv-80420-Dimitrouleas

ARON SECURITY INC. d/b/a ARROW
SECURITY,

      Counterclaim Defendant,

        v.

ADT LLC,

      Counterclaim Plaintiff.
_____/

## COUNTERCLAIM

ADT LLC, ("ADT") for its counterclaim, alleges and states:

### SUMMARY

1.     Defendant Arrow Security Services was an ADT subcontractor who provided local services for some of ADT's customers in and around New York. Arrow has breached the subcontract by frudulently submitting overcharges to ADT that on information and belief exceed

one million dollars.  Worse yet, Arrow has refused to return the keys to the premises of ADT's customers that Arrow formerly serviced, needlessly endangering the customers, and placing both ADT and Arrow at risk of suit by these customers.  ADT brings this action to replevy the keys and to recover its damages caused by Arrow's overcharges.

## JURISDICTION & VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. Venue lies in this District under 28 U.S.C. § 1391(b)(1) because ADT resides in it.

## THE PARTIES

4. Plaintiff ADT LLC is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431.  ADT is a citizen and domiciliary of the States of Delaware and Florida because its sole member, The ADT Security Corporation, is a corporation organized under the laws of the State of Delaware with its principal place of business at 1501 Yamato Road, Boca Raton, Florida.

5. Defendant Arrow Security Services, Inc., is a corporation organized under the laws of the State of New York (New York DOS No. 3794747).  The New York Department of State records list Arrow's principal place of business as 60 Knickerbocker Avenue, Bohemia, New York 11716.  In this action, Arrow alleges that it maintains its principal place of business at 300 West Main Street, Smithtown, New York 11787.  [DE 1 at 1, ¶ 4.]  As both addresses are found in New York, Arrow is a citizen and domiciliary of the State of New York.

**FACTS**

6.     ADT provides electronic security systems to homes and businesses throughout the United States.  Millions of customers rely on ADT to provide security services to help them to secure their premises against bodily injuries and property losses.

7.     In addition to ADT's electronic security services, ADT also provides some customers with guard services, to respond and inspect customer premises when an alarm sounds. ADT subcontracts with local vendors to provide these guard services under ADT's contracts with the customers.

8.     Arrow is a Long Island provider of these guard services in the New York region.

9.     On or about May 13, 2008, ADT's predecessor, ADT Security Services, Inc., ("ADTSSI") contracted with Arrow in a document titled, "Master Agreement for Subcontracting Services," [DE 1 at 8] for Arrow to provide guard response services in ADTSSI's behalf for certain ADTSSI customers, consisting chiefly of large commercial ADTSSI customers, located in and around New York.

10.    ADTSSI and Arrow agreed in 2008 to a price term of $14,600 per month.  Arrow submitted invoices each month for $14,600, and ADTSSI paid them in the ordinary course.

11.    In 2011, ADT's former parent corporation, Tyco International, undertook the reorganization of ADTSSI.  [DE 1 at 50.]

12.    Tyco spun off the residential and small business parts of ADTSSI alarm services business into a separate freestanding public company, The ADT Corporation, and its operating subsidiary, defendant ADT LLC.

13.    Tyco retained the commercial alarm services business of ADTSSI renamed it Tyco Integrated Security ("TIS").  Most of the services that Arrow had formerly provided to

ADTSSI under the Master Agreement pertained to the ADTSSI commercial accounts that TIS retained in the reorganization.

14. On information and belief, Arrow has continued to provide guard services to TIS and its successor, and to bill TIS separately for the same guard services that Arrow had formerly provided to ADTSSI for the retained commercial accounts.

15. Consistent with these changes, ADT's use of Arrow's guard services dropped sharply following the reorganization. For example, ADT's records show that in 2011, the last calendar year before the 2012 reorganization, Arrow conducted 92 service calls for ADTSSI when it included both the commercial and residential businesses. But for the past five years following the completed separation of ADT from TIS, from 2014 through 2018, Arrow responded in all to only 124 ADT customer calls – on average 24 per year, or two per month.

16. In advance of this reorganization, ADT renegotiated the price term of its Master Agreement with Arrow in a writing dated June 1, 2011 ("Amendment"). [DE 1 at 42.]

17. The Amendment, *inter alia*, adjusted the price term to follow a formula based on the work Arrow performed in the previous billing cycle under the contract. [DE 1 at 44-46.]

18. The Amendment stated that the renegotiated price terms governed the pricing of Arrow's services under the contract "notwithstanding anything in the Agreement to the contrary." [DE 1 at 42.]

19. The Amendment stated the reimbursable cost of a service call for billing purposes going forward at $65 per call response. [DE 1 at 46.]

20. With Arrow's agreement, ADT LLC adopted the ADTSSI/Arrow contract as amended upon the conclusion of the reorganization in 2012. [DE 1 at 50-51.]

21. After signing the Amendment, and later the Adoption Agreement, Arrow nonetheless continued to submit monthly invoices for $14,600 to ADT's accounts payable department for payment.

22. Arrow's continued billing of ADT at $14,600 per month after June 2011 violates the Amendment.

23. Moreover, Arrow's billing at 2008 rates resulted in astronomical bills in light of ADT's greatly-reduced use of Arrow's guard services following the reorganization. A monthly fee of $14,600 for two service calls on average per month results in a charge per call of $7,300 – an amount over one hundred times greater than the $65 per call specified in the Amendment as the reimbursable amount of a call.

24. ADT's accounts payable department was not aware of the renegotiated payment term stated in the Amendment, and continued to pay Arrow's monthly invoices for $14,600 as Arrow submitted them for payment.

25. Arrow's failure to submit invoices that complied with the Amendment's revised price term resulted in overcharges that ADT cannot compute without discovery, but that are believed to exceed one million dollars.

26. ADT first became aware of these overcharges in late 2017.

27. Upon learning of the overcharges, ADT asked Arrow to explain the charges, and how they could be reconciled with the renegotiated payment term stated in the Amendment.

28. Arrow provided no such explanation, but instead claimed at first not to know about the Amendment, and relied on the parties' 2008 agreement to a flat monthly rate of $14,600, which had since been superseded by the Amendment's renegotiated payment term.

29. ADT conducted an internal review of Arrow's services. That review showed not only that Arrow's billings far exceeded the amounts provided by the Amendment, but also that Arrow's services did not conform to the terms of the contract as amended. It showed, for example, that (1) Arrow was attributing to ADT's account the provision of services at addresses that did not belong to ADT customers; (2) Arrow was providing "roaming guard services" not provided by the contract; (3) Arrow appeared to have discontinued certain interior checks specified under the contract without ADT's consent; and (4) Arrow appeared unable to account for all keys to customer premises that ADT had entrusted to Arrow under the contract.

30. On or about March 30, ADT wrote to Arrow and made a formal request for an audit of the services Arrow performed under the contract for the preceding five years. ADT supplemented this request by letters dated April 24 and July 5, 2018.

31. Arrow refused these requests. ADT stopped payments of Arrow's invoices pending Arrow's cooperation in resolving these apparent breaches.

32. By letter dated October 31, 2018, ADT terminated the contract. The letter stated: "Termination is due to Arrow's material breach of the compensation terms of the Master Agreement. Specifically, despite numerous verbal and written attempts, Arrow has failed to validate that the amounts billed to ADT since August 2012 are in accordance with the terms of the [Amendment]. A flat monthly rate of $14,600 is not referenced anywhere" in the Amendment.

33. To enable Arrow to perform its functions under the contract, ADT entrusted the keys to the premises of over eighty ADT customers for whom Arrow provided guard response services under the contract. The customers had entrusted these keys to ADT so that ADT could provide them with guard response services.

34. Upon the termination of the contract, ADT instructed Arrow to return the keys. In the October 31 termination letter, ADT stated: "ADT demands the immediate return to ADT of all keys provided to Arrow."

35. ADT has renewed this demand on numerous occasions since October 31, directly and by undersigned counsel. For example, undersigned counsel wrote several times to Arrow's New York counsel, Michael Langer, to demand the return of the keys. Undersigned counsel renewed this demand with Arrow's Florida litigation counsel, Michael Pike and Daniel Lustig, once they entered appearances in this case.

36. Arrow has each time refused to return the keys.

37. Arrow has refused even to respond to ADT's requests, or provide an explanation for keeping customer keys following the termination of the contract.

38. Arrow has no legal basis for retaining possession of keys to the premises of ADT's customers following the termination of the contract.

39. ADT offered to post a bond in Arrow's favor in exchange for return of the keys. Arrow refused to respond to this request as well.

## COUNT ONE
## REPLEVIN

40. ADT incorporates paragraphs 1 through 39 by reference, as if set forth fully here.

41. Arrow is in possession of keys that belong to ADT's customers.

42. ADT has the right to possess the keys because its customers gave them the keys for use in providing services under the customers' contracts with ADT.

43. ADT entrusted the customers' keys to Arrow as a subcontractor under the parties' contract.

44. ADT's subcontract with Arrow is terminated.

45. Upon termination of the subcontract, Arrow has no valid legal right to possess the keys.

46. ADT has a superior right to possession of the keys. ADT's customers entrusted the keys to ADT for their own benefit and protection.

47. ADT is entitled to immediate possession of the keys.

48. ADT has demanded the return of the keys, including a written demand contained in the October 31, 2018, termination letter, and since repeated in, *inter alia*, written communications by undersigned counsel to Arrow's New York and Florida counsel.

49. Arrow has refused to respond to any of ADT's demands.

50. Arrow remains in wrongful possession of the keys.

**WHEREFORE**, ADT demands judgment against Arrow granting ADT a writ of replevin that commands the immediate return of the keys to ADT, along with an award of attorney fees and costs of suit, and such other and further relief as the law and the Court may provide in the circumstances.

## COUNT TWO
## BREACH OF CONTRACT

51. ADT incorporates paragraphs 1 through 39 by reference, as if set forth fully here.

52. Arrow and ADT Security Services, ADT's predecessor, entered into the Master Agreement for Subcontracting Services dated May 13, 2008.

53. The parties amended the contract by the Amendment dated June 1, 2011.

54. The parties each gave consideration for the contract and its amendment.

55. ADT performed its obligations under the contract as amended.

56. Arrow breached the contract as amended by charging ADT in excess of the sums agreed to by the parties under the Amendment.

57. In addition, Arrow breached the contract by performing services not provided by the contract, and by failing to perform other services required by the contract.

58. Finally, Arrow breached the contract by refusing to return the customer keys to ADT upon the termination of the contract.

59. ADT has been injured by these breaches by the amounts ADT paid in excess of the amounts agreed to under the Amendment, and by the hindrances to ADT's ability to discharge its contractual duties to its customers due to Arrow's refusal to return the keys following the termination of the contract.

**WHEREFORE**, ADT demands judgment against Arrow awarding ADT its damages arising from Arrow's breach, in an amount to be determined at trial, along with prejudgment interest, attorney fees and costs of suit, along with such other and further relief as the law and the Court may provide in the circumstances.

Dated: May 11, 2019

Respectfully submitted,

**McNEW P.A.**

/s/ C. Sanders McNew
_____
C. Sanders McNew
mcnew@mcnew.net
Florida Bar No. 0090561
2385 NW Executive Center Drive, Suite 100
Boca Raton, Florida  33431
Tel:  (561) 299-0257

*Counsel for ADT LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this eleventh day of May, 2019, I caused a true and correct copy of the foregoing Answer and Counterclaim to be served by CM/ECF on all parties listed to receive electronic service for this case.

s/ C. Sanders McNew
_____
C. Sanders McNew